PPG INDUSTRIES, INC., a Pennsylvania Corporation, Appellant,

v.

ASHLAND OIL COMPANY–THOMAS PETROLEUM TRANSIT DIVISION, a Kentucky Corporation,

v.

CANAL BARGE COMPANY, INC., et al.

No. 75–1323.

United States Court of Appeals, Third Circuit.

Argued Sept. 30, 1975.

Decided Dec. 16, 1975.

Joseph W. Conway, Balzarini, Walsh, Conway & Maurizi, John A. Pillar, Pittsburgh, Pa., for appellant.

Theodore O. Struk and James R. Miller, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee Ashland Oil.

Donald L. Very, Tucker Arensberg & Ferguson, Pittsburgh, Pa., Robert B. Acomb, Jr., Jones, Walker, Waechter, Pottevent, Carrerre & Denegre, New Orleans, La., for appellee Canal Barge.

Before HASTIE, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal challenges the May 1, 1974, judgment entered on a directed verdict for defendants-appellees, Ashland Oil Company (Ashland) and Canal Barge Company (Canal), on the ground that plaintiff's claims for damages to goods in transit against defendants were barred by 46 U.S.C. § 1303(6) (1970), the one-year limitation period in the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1301 et seq. (1970).[1] We affirm the judgment for Ashland and reverse the judgment for Canal.[2]

On March 2, 1971, Ashland agreed with plaintiff-appellant, PPG Industries, Inc. (PPG), to transport a quantity of anti-freeze liquid belonging to PPG from Beaumont, Texas, to St. Paul, Minnesota.[3] The Ashland-PPG Transportation Agreement stated that the "Carrier" (Ashland) would be entitled to the benefits of COGSA, including the Act's one-year statute of limitations.

---

1. After the entry of such judgment, defendants filed a Motion For New Trial and Judgment N.O.V., which was denied on January 28, 1975, by the district court. Cross-claims for property damage to Barge REB–1602 and a counterclaim for freight charges were dismissed without prejudice by the May 1, 1974, order for entry of judgment.

2. Jurisdiction of the court is based on diversity of citizenship. See 28 U.S.C. § 1332.

3. The formal parties to the agreement were Thomas Petroleum Transit Co. and Houston Chemical Co. Thomas Petroleum is a division of Ashland Oil Company and Houston Chemical is a division of PPG.

See 46 U.S.C. § 1303(6) (1970).[4] Ashland subsequently towed Barge REB–1602, which contained the anti-freeze, to Baton Rouge, Louisiana, and on March 11, 1971, without PPG's knowledge, entered into a separate Towing Contract with Canal whereby Canal agreed to tow the barge from Baton Rouge to St. Paul.[5] The Ashland-Canal Towing Contract made no reference to COGSA or to the Ashland-PPG Transportation Agreement and explicitly provided that Canal was entitled to the benefits of § 3 of the Harter Act, 46 U.S.C. § 192 (1970).

Somewhere between Beaumont and St. Paul, the anti-freeze was contaminated by river water,[6] and on November 1, 1972, more than six months after the one-year COGSA statute of limitations had run,[7] PPG commenced this action against Ashland. PPG subsequently amended its complaint and asserted damages claims against Canal, as an additional defendant, which company Ashland had previously joined as a third-party defendant. Both Canal and Ashland raised as a defense the one-year COGSA statute of limitations referred to in the Ashland-PPG Transportation Agreement. After a jury trial on the limited question of whether Ashland was barred from raising the statute of limitations defense[8] by reason of its conduct during the 18 months preceding filing of this suit, the district court directed a verdict in favor of both Canal and Ashland.

PPG's contentions on this appeal are two-fold. First, PPG asserts that the district court erroneously directed a verdict in favor of Ashland because Ashland (1) waived the statute of limitations defense, (2) entered a binding contract not to raise the defense, or (3) should be estopped from raising the one-year limitation statute. Second, PPG contends that even if its action against Ashland was untimely, Canal is not entitled to raise the one-year COGSA statute of limitations incorporated into the Ashland-PPG Transportation Agreement.

## I. *Claim against Ashland*

We find no merit in PPG's first contention stated above.[9] We will affirm the judgment in favor of Ashland and turn to the question of whether Canal is entitled to claim the benefit of the one-year statute of limitations in 46 U.S.C. § 1303(6).

---

**4.** The relevant provisions of the Transportation Agreement are set out in the text at page 506, *infra.*

**5.** The formal parties to the contract were Canal Barge Co. and the Thomas Petroleum Transit Division of Ashland. The contract is reprinted in full in plaintiff-appellant's appendix at 165–66a.

**6.** During the argument on the defendants' Motion For Directed Verdict, defense counsel represented, without contradiction, that while Canal was towing the barge on the upper Mississippi between March 30 and April 4, 1971, there was damage to the tow from grounding.

**7.** The COGSA statute of limitations begins to run upon delivery of the transported goods at their destination. See 46 U.S.C. § 1303(6) (1970). The contaminated anti-freeze was delivered in St. Paul on April 4, 1971.

**8.** In view of the district court's January 28, 1975 Memorandum (see note 9 below), and since we find no merit in plaintiff-appellant's arguments that Ashland was barred from raising the statute of limitations defense, it is unnecessary to describe in detail the factual background of PPG's contentions. It is enough to say generally that PPG's theories (see text, *infra*) rely heavily on certain communications from Ashland Vice-President Andrew Greller, in which he mentions "friendly litigation" as a means of possibly resolving the dispute.

**9.** See *PPG v. Ashland Oil Co.*, Memorandum and Order of January 28, 1975 (W.D.Pa., Civil No. 72–932), reprinted in appellant's appendix at 490–96a. See also transcript of conference of April 24, 1974, and transcript of conference in chambers after conclusion of the one-day jury trial, which are reprinted in Ashland's brief at 1–69b; transcript of proceedings, reprinted in appellant's appendix at 877–1089a. The record does not support the contention that Ashland ever "offered" or "promised", in any legal or practical sense of those terms, to forego reliance on any valid defense, including the statute of limitations. Also, there is no evidence that Ashland knowingly waived any rights to rely on the applicable one-year limitation period.

## II. *Claim against Canal*

Canal's principal argument, which was adopted by the district court,[10] rests on Canal's asserted status as a "carrier" engaged in the "carriage of goods" as defined in § 1301(e) of COGSA. 46 U.S.C. § 1301(e) (1970). Specifically, Canal urges us to conclude (1) that PPG and Ashland intended COGSA to apply " . . . from the period when the cargo was loaded aboard the barge until the time it was discharged at the end of the trip," see 46 U.S.C. § 1301(e) (definition of term "carriage of goods"),[11] (2) that COGSA is therefore applicable "to the *entire transportation* of the cargo by *whomever* the cargo was physically being handled at the time," and (3) that Canal is therefore entitled to claim the benefit of the COGSA statute of limitations because Canal is a carrier engaged in the "carriage of goods" and performing Ashland's work under the contract (brief for appellee, Canal Barge Co., Inc., at 10). Our examination of the Ashland-PPG Transportation Agreement and our analysis of the applicable law compels us to reject this line of reasoning, as explained in A and B below.

### A. *The federal statutory terms*

■ In the absence of a contract or stipulation to the contrary, the Harter Act (Act of February 13, 1893, 46 U.S.C. §§ 190–194) applies to all shipments by water from one port of the United States (Beaumont) to another (St. Paul).[12] See Gilmore and Black, *Law of Admiralty* (2d ed. 1975), at 147. The limitations of liability section of the Harter Act, 46 U.S.C. § 192, contains no statute of limitations so that either a six-year statute of limitations (page 9 of plaintiff's brief), laches (page 15 of Canal's brief), or some other limitations period might control.[13]

■ Since the transportation in this case was between two domestic ports and was not "in foreign trade," neither COGSA nor its one-year statute of limitations governs the PPG-Canal relationship under the terms of 46 U.S.C. § 1300 (1970). See, *e. g.*, *Globe Solvents Co. v. The California*, 167 F.2d 859, 862 (3d Cir.) (en banc), *cert. denied*, 335 U.S. 844, 69 S.Ct. 67, 93 L.Ed. 394 (1948); *In re Marine Sulphur Queen*, 460 F.2d 89, 102 (2d Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972). In addition, we are not dealing with a "contract of carriage" as defined by COGSA, since it is not "covered by a bill of lading or any similar document of title . . . ."[14]

■ Also, the Ashland-PPG Transportation Agreement does not contain a sufficiently "express statement that it shall be subject to the provisions of

---

**10.** The district court used this language in its January 28, 1975, Memorandum at 492a:

> "PPG also contends that the COGSA statute of limitation is not applicable to Canal because Canal is neither a party to nor an intended third-party beneficiary of the PPG-Ashland contract. *Robert C. Herd & Co., Inc. v. Krawill Machinery Corporation*, 359 U.S. 297 [79 S.Ct. 766, 3 L.Ed.2d 820] (1959). However, in the instant case both Ashland and Canal were, at all pertinent times, engaged in the 'carriage of goods', 46 U.S.C.A. § 1301(e)."

**11.** "The term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 1301(e) (1970).

**12.** In enacting COGSA in 1936, Congress made clear in House Report No. 2218 that:

> "The Harter Act will remain in full force and effect as to domestic commerce. . . . The immediate need is for uniformity of law in foreign trade, and it seems advisable to confine the present bill to that need. As it is now drawn (see 13) it can be made applicable to the intercoastal and coastwise trades by mutual agreement between the shipper and the carrier . . . . If it should be desirable to make these rules apply to interstate trade, it should be done by separate legislation."

**13.** Since this issue was not reached by the district court, it is not before us and will be subject to consideration by that court on remand.

**14.** See 46 U.S.C. § 1301(b).

[COGSA]" to make that Act applicable to this case by operation of 46 U.S.C. § 1312 (1970).[15] See *In re Marine Sulphur Gulf Queen, supra,* 460 F.2d at 103 (2d Cir.). Further, 46 U.S.C. § 1312 is inapplicable to the Transportation Agreement because the Agreement is not "any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea . . . ." It is clear that the Transportation Agreement is not a bill of lading and, under the statutory construction principle of *noscitur a sociis,* "similar document of title" refers to a warehouse receipt type of document but not to such agreement. See *Johnson v. McCrackin-Sturman Ford,* 527 F.2d 257 (3d Cir. 1975).

## B. *The contractual terms*

■ Since, as we have noted above, COGSA by its own terms is inapplicable to the PPG-Canal relationship, this appeal presents the contractual question of whether the Ashland-PPG Transportation Agreement, which makes COGSA applicable at least between Ashland and PPG, expresses an intent to extend the benefits of COGSA to Canal, a stranger to the Ashland-PPG contract. *Cf. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 303–05, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *DeLaval Turbine, Inc. v. West Industries, Inc.,* 502 F.2d 259, 264 (3d Cir. 1974). We conclude that the contract does not express such an intent.

Paragraph 21 of the Ashland-PPG Transportation Agreement provides in pertinent part as follows:

"Release

" . . . neither Carrier nor any persons employed by Carrier . . . shall be liable for any loss of or damage to . . . [the] cargo . . . unless caused by Carrier's failure to use due diligence . . . . Without limiting the generality of the above, Carrier, although not a common carrier, shall be entitled to the same limitation of liability as common carriers receive under Title 46 U.S.C.A. Sec. 1301 et seq. U.S. Carriage of Goods by Sea Act . . . ."

In our view, nothing in the quoted language of paragraph 21 or any other part of the Ashland-PPG contract manifests an intent to give Canal or any third party not a division of Ashland the benefits of COGSA. As defined in the first sentence of the contract, the term "Carrier" as used in the Agreement denotes Ashland.[16] Thus, paragraph 21 can be read as manifesting an intent to give Canal the benefit of COGSA only if we conclude (a) that Canal is a person "employed" by Carrier, and (b) that the term "Carrier" as used in the last sentence of paragraph 21 includes such "persons employed by Carrier." We decline to adopt such a strained construction of this contract. Read in context, it is apparent that the term "persons employed by Carrier" was intended to refer to individual employees of Ashland and not to independent contractors such as Canal. This conclusion is buttressed by the undisputed fact that PPG was unaware that Canal would be engaged to tow the Ashland barge.

Thus, while it appears that PPG and Ashland intended COGSA to govern *their* rights and liabilities, at least during the period of time encompassed by the term "carriage of goods," we do not accept the conclusion that *Canal* is entitled to the benefits of COGSA or that the parties intended COGSA to govern "the *entire transportation* of the cargo, by *whomever* the cargo was being handled."[17]

---

**15.** " . . . any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter: . . . ." 46 U.S.C. § 1312 (1970).

**16.** As noted above, see note 3, *supra,* Thomas Petroleum Co., a division of Ashland, was the formal party to the Agreement.

**17.** See note 15, *supra,* and accompanying text.

■ We have concluded that Canal's argument that it is entitled to application of the COGSA limitation period because it was performing some of Ashland's duties under the contract is foreclosed by *Herd & Co. v. Krawill Machinery Corp., supra,* 359 U.S. at 303–05, 79 S.Ct. 766. There the Supreme Court explicitly rejected the theory " . . . that all agents of the carrier who perform any part of the work undertaken by the carrier in the contract of carriage . . . are, by reason of that fact alone, protected by the provisions of the contract limiting the liability of the carrier, though such agents are not parties to nor express beneficiaries of the contract." *Herd & Co. v. Krawill Machinery Corp., supra,* 359 U.S. at 303, 79 S.Ct. at 770.[18]

Canal asserts that *Herd* is distinguishable because it involved an attempt to extend COGSA's limitations of liability to a third party who was not engaged in the carriage of goods.[19] We disagree. First, we do not see how Canal's status as a "carrier" engaged in the "carriage of goods" can have any relevance until we first determine that the Act was intended to apply to Canal. Canal's argument misses the critical point that COGSA can apply to this case only as a matter of contract and only to the extent that the parties have manifested an intent that it should apply.[20] See *Pannell v. United States Lines,* 263 F.2d 497, 498 (2d Cir.), *cert. denied,* 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959). Furthermore, whatever validity the distinction between a carrier and a non-carrier has in a case where COGSA applies by its own wording,[21] we see no reason—and none has been suggested—why the principle announced in *Herd* should not apply under the circumstances of this case, where the COGSA provisions do not apply as explained under A above. Nor do we perceive any incongruity or unfairness in holding that Ashland is entitled to a one-year statute of limitations while Canal, although engaged in the same work, is not. Private parties have the power to make COGSA applicable to domestic contracts of carriage. But in its contract with Ashland, Canal not only did not bargain for the one-year COGSA statute but that contract specifically provided that Canal, "although not a common carrier, shall be entitled to the same limitation of liability as common carriers receive under Section 3 of the Harbor [sic] Act (46 U.S.C. § 192)."[22] In the absence of language in the Ashland-PPG contract extending COGSA to Canal, we see no reason why Canal should be entitled to the terms of COGSA in view of the analysis in A above.

For the foregoing reasons, that portion of the judgment against PPG and in favor of Ashland will be affirmed, that part of the judgment entered against PPG and in favor of Canal will be reversed, and the case will be remanded for further proceedings consistent with this opinion.

---

18. This theory previously had been adopted in *A. M. Collins & Co. v. Panama R. Co.,* 197 F.2d 893 (5th Cir.), *cert. denied,* 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677 (1952). This suit arises under the general maritime law of the United States and is thus governed by federal law. See Gilmore & Black, *The Law of Admiralty* (2d ed. 1975), at 45–47; *Fireman's Ins. Co. v. Gulf Puerto Rico Lines,* 349 F.Supp. 952, 960–63 (D.P.R.1972).

19. *Herd* involved a negligent stevedore who was hired by the carrier and who was claiming the benefits of COGSA's $500.00 per package limitation on liability. *Herd & Co. v. Krawill Machinery Corp., supra;* see 46 U.S.C. § 1304(5) (1970).

20. For the same reason, Canal's arguments (1) that the COGSA statute of limitations extinguishes the right as well as the remedy, and (2) that *DeLaval Turbine, Inc. v. West Industries, Inc.,* 502 F.2d 259 (3d Cir. 1974), implicitly recognized the distinction between carriers and non-carriers, are irrelevant.

21. See *Herd & Co. v. Krawill Machinery Corp., supra,* 359 U.S. at 301–02, 79 S.Ct. 766.

22. No reference to COGSA appears in that contract.