COMMONWEALTH PETROCHEMICALS, INC., and Flour Engineers and Constructors, Inc., Appellees,

v.

S/S PUERTO RICO, her engines, boilers, tackle, etc., Defendant,

and

Puerto Rico Maritime Shipping Authority, Appellant,

and

Leonard Brothers Trucking Company, Defendant.

No. 78–1749.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1979.

Decided Sept. 19, 1979.

Geoffrey S. Tobias and Kieron F. Quinn, Baltimore, Md. (Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellant.

Barrett W. Freedlander, Baltimore, Md. (Donald A. Krach, Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellees.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

En route from Baltimore, Maryland to San Juan, Puerto Rico, an electrical transformer aboard the *S.S. Puerto Rico* was damaged. The covering bill of lading incorporated the provisions of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315, and limited the carrier's lia-bility to $500 per package. The transform-er was defined as being one package in the long form bill of lading that was incorpo-rated by reference into the short form bill given to the shippers. The district court refused to give effect to this definition and held the carrier liable for the full amount of the damage to the transformer, $13,901.01.

On the carrier's appeal, three issues are presented for decision. May the parties to a domestic contract of ocean carriage incor-porate the provisions of COGSA and at the same time define a term of that statute in a manner that may be inconsistent with the interpretation that has been placed upon it by the courts? If so, may this be done through the use of two bills of lading, a short form given to the shipper incorporat-ing COGSA and a long form incorporated by reference in the short form which pro-vides the possibly inconsistent definition? And finally, was this effectively done in the case at bar? We answer all three issues in the affirmative and reverse.

I

The pertinent facts and the proceeding below may be briefly stated. The trans-former measured more than 10 feet in each dimension and weighed 47,700 pounds. It was bolted to an iron skid and then loaded, with a second such transformer, on a special flat-bed trailer for the land journey from Rome, Georgia to Baltimore. The iron skids were in turn bolted to the trailer and the transformers were further fixed in place with heavy chains. When it arrived in Baltimore, the trailer was loaded on the *S.S. Puerto Rico* and during the voyage to San Juan one of the transformers was dam-aged.

The shippers, Commonwealth Petrochem-icals, Inc. and Fluor Engineers and Con-structors, Inc., then brought this action against the *S.S. Puerto Rico* in rem and its owner *pro hac vice,* Puerto Rico Maritime Shipping Authority, in personam to recover for the damage. The carrier admitted lia-bility and the case was submitted to the district court on the pleadings and a stipu-

lated set of facts, the only issue for decision being the measure of damages.[1] The carrier sought to limit recovery to $500 on the theory that the bill of lading[2] and the Carriage of Goods by Sea Act[3] incorporated by reference therein,[4] permitted limitation to $500 per package and that the partially enclosed transformer had been defined as one package. The district court concluded that by incorporating COGSA, the parties had also incorporated the judicial construction of the term "package" as used in 46 U.S.C. § 1304(5), and that under those constructions the transformer did not constitute a package. *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico,* 455 F.Supp. 310 (D.Md.1978). It therefore entered judgment in the full amount of the damage and this appeal followed.

## II

Congress has twice legislated comprehensively with respect to the relative rights and liabilities of ocean-going carriers and shippers. The first enactment, The Harter Act, 46 U.S.C. §§ 190–196, passed in the late 1800's originally covered all contracts of ocean carriage to or from the ports of the United States, but the subsequent enactment of COGSA in 1936 narrowed its scope. COGSA is the American version of an international convention commonly

1. Leonard Brothers Trucking Co., the land carrier that transported the transformer from Georgia to Baltimore was also sued, but judgment was entered in its favor.

2. On the face of the short form bill of lading, the following provision appeared.

In accordance with the carrier's tariff, carrier's liability shall be limited to no more than $500.00 per package, piece or customary freight unit when not shipped as package or piece unless a greater value is set forth herein as $_____ and unless shipper pays a charge of 2% of declared value in excess of $500.00 which charge is $_____.

The blanks were not filled in. The long form bill of lading which was incorporated by reference into the short form bill contained the provision next quoted.

In the event of any loss, damage or delay to or in connection with goods exceeding in actual value $500 per package, lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per customary freight unit, as the case may be, and the carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit, unless the nature and a higher value shall be declared by the shipper in writing before shipment and inserted in this Bill of Lading.

3. 46 U.S.C. § 1304(5) provides:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

4. The short form bill of lading issued by the carrier provided: "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936." The long form bill of lading incorporated by reference into the short form, further provided:

This Bill of Lading shall have effect while the containers, goods and packages are in the custody of the vessel or Puerto Rico Maritime Shipping Authority, its agents, its servants and its independent contractors . . . . When this Bill of Lading governs, it is subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which are incorporated herein, and nothing herein contained is a surrender by the carrier of any of its rights, immunities or limitations or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent but no further.

The carrier shall be entitled to avail itself of all rights, limitations, exemptions and immunities provided for in said Carriage of Goods by Sea Act, although the contract of carriage evidenced by this Bill of Lading may be for the carriage of goods between ports of the United States.

called the Hague Rules which was based in large part on the Harter Act. When Congress enacted COGSA, it felt that the problems of domestic and foreign commerce required discrete treatment, the need for uniformity being greater in the international trade, H.Rep. No. 2218, 76th Cong., 1st Sess., *quoted in PPG Industries, Inc. v. Ashland Oil Co.—Thomas Petroleum Transit Division,* 527 F.2d 502, 505 n.12 (3d Cir. 1975), and therefore limited COGSA's applicability to voyages in foreign commerce, expressly preserving Harter for domestic trade. It did not, however, stop there, for it permitted the parties to domestic contracts of carriage to elect to subject their agreement to COGSA rather than Harter by expressly incorporating COGSA therein. The parties did so in this instance.

Section 1312 of COGSA provides:

This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade. As used in this chapter the term "United States" includes its districts, territories, and possessions. The term "foreign trade" means the transportation of goods between the ports of the United States and ports of foreign countries. Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: *Provided, however,* That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto

as fully as if subject hereto by the express provisions of this chapter . . . . 46 U.S.C. § 1312. Relying on the language that COGSA should apply to contracts of domestic carriage when incorporated therein "as fully as if subject hereto by the express provisions of this chapter," the district court reasoned that the transformer did not constitute a "package" within the meaning of § 1304(5) of COGSA [5] and that to give effect to the contractual definition would lessen the carrier's liability in violation of 46 U.S.C. § 1303(8).[6] In this we conclude the district court erred.

■ We have held that when COGSA does not apply of its own force but is incorporated into a maritime contract by reference, it does not have "statute rank"; rather, it is merely part of the contract, a term like any other. *United States v. M/V Marilena P,* 433 F.2d 164, 170 (4th Cir. 1969).[7] In *Pannell v. United States Lines Co.,* 263 F.2d 497, 498 (2d Cir. 1959), the United States Court of Appeals for the Second Circuit held that when COGSA does not apply *ex proprio vigore,* effect should be given to the parties' definition of package even if that definition is contrary to that which would control if COGSA were directly applicable. We find *Pannell's* reasoning compelling.

■ This seems to be simply an application of the principle of construction applicable to ocean bills of lading that as between a general and a specific provision, effect is to be given to the more specific. *See, e. g., Farr v. Hain S.S. Co.,* 121 F.2d 940 (2d Cir. 1941) (L. Hand, J.) (Harter Act); *In re Petterson Lighterage & Towing Corp.,* 154 F.Supp. 461 (S.D.N.Y.1957), *aff'd per curiam,* 253 F.2d 952 (2d Cir. 1958) (COGSA).

5. See note 3 *supra.*

6. 46 U.S.C. § 1303(8) provides:
   Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided

in this chapter, shall be null and void and of no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability.

7. *Marilena P* involved incorporation of COGSA into a charter party. COGSA does not apply *ex proprio vigore* to such contracts. 46 U.S.C. § 1305.

The term "package" is not defined in COGSA except insofar as one may consider judicial construction of the term to be definition. That construction, furthermore, is not uniform with partially encased items such as the transformer involved here. 2A *Benedict on Admiralty* § 167 at 16–19 to –20 (7th ed. I. Hall, A. Sann & M. Katzman 1977) (collecting cases). Under this principle the COGSA usage would be deemed the more general and the specific contractual usage therefore controlling.

A number of lower courts, in opinions that are not officially published, have reached the same result as did the Second Circuit in *Pannell. Export Project Services Ltd. v. S.S. Steinfels,* [1975] A.M.C. 765 (S.D.N.Y.); *Tidewater Venice, Inc. v. M/V Schwarzenfels,* [1972] A.M.C. 1775 (E.D. La.); *Firestone International Co. v. Isthmian Lines, Inc.,* [1964] A.M.C. 1284 (S.D.N.Y.); *St. Paul Fire & Marine Insurance Co. v. Alcoa Steamship Co.,* [1957] A.M.C. 574 (New York City, New York, Mun.Ct.), *aff'd per curiam,* [1957] A.M.C. 576 (New York City, New York, Mun.Ct., Appellate Term, 1956).

The language in the *Pannell* bill of lading incorporating COGSA as well as the definition of package was in all pertinent parts identical to that of the long form bill of lading in the appeal before us.[8] *Pannell*

does differ from the case at bar, however, in one particular which shippers contend is critically distinguishing: it did not involve incorporation of COGSA into a contract of domestic carriage and therefore was not subject to the language of § 1312 that COGSA should apply "as fully as if subject hereto by the express provisions of this chapter." Likewise, none of the other cases reaching the same result were subject to § 1312's proviso; all involved incorporation of COGSA outside its statutory time frame, *see* 46 U.S.C. §§ 1307, 1311, or with respect to items that were not "goods" within the provisions of COGSA, *see* 46 U.S.C. § 1301(c).

As tenable as that distinction may appear at first blush, the weight of reported authority does not accept it.[9] The Third Circuit has noted that COGSA can apply to domestic commerce "only as a matter of contract and only to the extent that the parties have manifested an intent that it should apply." *PPG Industries, Inc. v. Ashland Oil Co.—Thomas Petroleum Transit Division,* 527 F.2d 502, 507 (3d Cir. 1975) (footnote omitted). In a related context, the District Court for the District of Puerto Rico has expressly rejected such a distinction. *Empacadora Puertorriquena De Carnes, Inc. v. Alterman Transport Line, Inc.,* 303 F.Supp. 474, 479 n.10 (D.P.R. 1969).[10]

---

**8.** See note 4 *supra.*

**9.** What authority there is to the contrary is distinguishable. In *Burdines v. Pan-Atlantic S.S. Corp.,* 199 F.2d 571 (5th Cir. 1952), the court gave effect to COGSA's one year statute of limitations over a two year period provided in the bill of lading. COGSA's incorporation, however, was effected by rubber stamping a provision onto the printed bill of lading and the basis of the decision is clearly placed on the principle that "written" terms control over printed ones. The Ninth Circuit in *Pan Am. World Airways, Inc. v. California Stevedore & Ballast Co.,* 559 F.2d 1173 (9th Cir. 1977), refused to give effect to a $500 per package limitation in a domestic contract of carriage that incorporated COGSA because no opportunity had been provided for the shipper to declare a greater value as required by 46 U.S.C. § 1304(5). It should be noted, however, that that limitation would also have been invalid

under the law as it has developed generally in relation to common carriers and the court's reasoning was on those general principles.

**10.** Section 1303(6) requires that suits under COGSA be "brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 1303(6). The statute does not define when an action is "brought," but the courts have uniformly held that to require only the filing of the libel. *E. g., Internatio-Rotterdam, Inc. v. Thomsen,* 218 F.2d 514, 515–16 (4th Cir. 1955). When COGSA has been incorporated with respect to time periods outside the statutory frame, the parties have been allowed to define bringing an action as obtaining jurisdiction over the defendant. *J. Aron & Co. v. The Askvin,* 267 F.2d 276 (2d Cir. 1959) (per curiam). In *Empacadora,* the court gave effect to such a definition in a domestic contract, refusing to distinguish *The Askvin* on the basis of

The fact that Congress expressly provided for the incorporation of COGSA into domestic contracts of carriage to which it does not apply *ex proprio vigore* may be explained by the existence of the Harter Act. As noted earlier, Congress viewed the need for amendment of the Harter Act to present distinct problems for foreign and domestic commerce. The other mercantile nations were subscribing to the Hague Rules and to bring our law into uniformity with theirs Congress adopted our version of the Rules, COGSA. The need for uniformity was felt to be less strong with domestic trade, but Congress concluded that the option of following COGSA should be available to domestic carriers and shippers as well. Since the Harter Act was to be expressly preserved for the domestic trade, statutory authority for the incorporation of COGSA had to be provided and since Harter and COGSA do differ in some particulars the language upon which the district court in the instant matter relied was used.[11] As indicated, we do not believe that this merely authorizing language is properly read to alter the ordinary rules of contract interpretation when, pursuant to it, COGSA is incorporated.

### III

█ Shippers argue that public policy precludes enforcement of a clause in a long form bill of lading when only the short form is actually given to the shipper and the clause is one that is not typically found in bills of lading.

The use of a long form bill of lading that is incorporated by reference into the short form given the shipper is specifically provided for in sections 2 and 5 of the Intercoastal Shipping Act, 46 U.S.C. §§ 844, 845b. The long form must be posted in certain places and be available upon request, but no suggestion is made that that

was not done in this case. The practice has received judicial approval, *e. g., Zifferer v. Atlantic Lines, Ltd.,* 278 F.Supp. 736 (D.P. R.1968), and seems to be customary in the industry.

Several courts, however, have refused to give effect to provisions included in the long form when the provision was such that the shipper could not be expected to have anticipated its existence. *Encyclopaedia Brittanica, Inc. v. SS Hong Kong Producer,* 422 F.2d 7 (2d Cir. 1969); *Caribbean Produce Exchange, Inc. v. Sea Land Service, Inc.,* 415 F.Supp. 88 (D.P.R.1976). We do not think that the case at bar falls within this qualification to the permissible use of two bills of lading. As a leading commentator on ocean-carriage has stated, "[T]he key to determining what is a package or unit for purposes of limitation is the intention of the parties, particularly as declared on the bill of lading . . . ." W. Tetley, *Marine Cargo Claims* 435 (2d ed. 1978) (emphasis omitted). A clause defining the term package should be expected. In fact the *Pannell* decision involved a definition of "package" in language essentially identical to that involved in this case.

### IV

█ Remaining for determination is the question whether the provisions of the bill of lading in this case define the transformer as one package. The clause of the long form bill of lading which purports to limit liability to $500 per package,[12] continues: "It is agreed that the meaning of the word 'package' includes animals, pieces and all articles of any description except goods shipped in bulk." That definition is for all practical purposes identical to that involved in *Pannell* where the Second Circuit held that a yacht shipped in a cradle was a package within its terms. The transformer

---

the language in § 1312. The decision has been followed. *Atlantic Cos. v. Gulf P.R. Lines, Inc.,* 355 F.Supp. 172 (D.P.R.1972); *Medina v. South Atl. & Caribbean Line, Inc.,* 342 F.Supp. 498 (D.P.R.1972).

**11.** Congress also provided authority, although less specifically, for the incorporation of COG-

SA in respect of the other way in which Harter was preserved, the time period prior to loading and subsequent to discharge. *Puerto Rico v. Sea-Land Serv., Inc.,* 349 F.Supp. 964, 969 (D.P. R.1970); *see* 46 U.S.C. §§ 1307, 1311.

**12.** See note 2 *supra*.

involved here is also a package under that definition.[13] We note, although it is not conclusive, *Nichimen v. M.V. Farland,* 462 F.2d 319, 335 (2d Cir. 1972), that in the space in the bill of lading entitled "No. of Pkgs." each transformer is designated as a separate package.

■ The shippers contend that to permit the incorporation of COGSA while at the same time allowing the carrier to redefine its provisions to limit its liability is unreasonable. When incorporated into a domestic contract of carriage, COGSA is just another term of the agreement. It must be construed, within reason, in harmony with the other provisions of the contract. The term involved here is clearly valid under the Harter Act, the statute applicable *ex proprio vigore, see Reid v. Fargo,* 241 U.S. 544, 551, 36 S.Ct. 712, 60 L.Ed. 1156 (1916); *Venezuelan Meat Export Co. v. United States,* 12 F.Supp. 379, 387–88 (D.Md.1935), so the danger posed by permitting the parties to supersede an Act of Congress by their agreement is not present. While more than minimal compliance with Harter may be demanded in some circumstances, this is not one of them. Had shippers wanted to obtain greater coverage than that provided by the terms of the bill of lading, that bill permitted them to declare a greater value for their goods. They did not do so.

■ Finally, shippers suggest that the definition of "package" contained in the bill of lading is ambiguous, pointing to other places in the bill where assertedly the definition may not easily be transposed for the word it defines. An adequate response is that of Judge Learned Hand:

[I]t is idle to invoke the canon against redundancy in the interpretation of such a maritime document as this. Courts have again and again observed the curious, often the fantastic, incongruities in charter-parties, bills of lading and insurance policies, composed, as they so often are, of a motley patchwork of verbiage thrown together apparently at random, often in an unfamiliar diction three hundred years old. Particularly in a document meant to do service in varying situations each word of such a discordant medley need not be made to count as we seek to make all the words count of carefully prepared contracts drawn for a particular occasion.

*Farr v. Hain S.S. Co.,* 121 F.2d at 945. The definition is unambiguous in the context of the clause in which it was included and which alone is the subject of this litigation. It should be enforced, according to its plainly intended meaning there.

The judgment of the district court is reversed and the case is remanded for entry of judgment in favor of plaintiffs in the amount of $500.

*REVERSED AND REMANDED.*

---

13. We need not and do not decide whether the entire flat bed trailer was one package within the meaning of this provision.