**CROFT & SCULLY CO.,**
**Plaintiff-Appellant,**

v.

**M/V SKULPTOR VUCHETICH, Etc., et al., Defendants-Appellees.**

No. 81–2060
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1982.

---

Sharpe & Kajander, R. M. Sharpe, Jr., and Stuart B. Collins, Houston, Tex., for plaintiff-appellant.

Royston, Rayzor, Vickery & Williams, Gus A. Schill, Jr., Robert H. Entnyre, Jr., John M. Elsley, Houston, Tex., for defendants-appellees.

Vinson & Elkins, Henry S. Morgan, Jr., Houston, Tex., for M/V Skulptor Vuchetich & Baltic.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Appellant Croft & Scully Co. appeals from a decision by the District Court limiting to $500 its recovery in an incident where the parties stipulated negligence. Finding that the District Court applied an incorrect standard in determining what constitutes a "package" for purposes of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.A. § 1300 *et seq.*, we reverse and remand. 508 F.Supp. 670.

### *Things Go Better With Coke*

Croft & Scully contracted to ship 1755 cases of soft drinks from Houston, Texas to the middle eastern country of Kuwait. Apparently Kuwaitis would like to be Peppers, too. Croft & Scully arranged to ship the soft drinks on board M/V SKULPTOR VUCHETICH, which would arrive in Houston on December 8, 1977. Baltic Shipping Co., owner of SKULPTOR, dispatched a 20-foot steel container to Croft & Scully's

supplier in Wharton, Texas. Employees of the supplier loaded the 1755 cases, each containing 4 "6-packs" or 24 cans, into the container, closed and sealed it—a real Teem effort. The supplier then trucked the container to Goodpasture's yard, near the Houston Ship Channel, which Baltic had selected as a convenient storage facility pending arrival of SKULPTOR.

During the Refreshing Pause between arrival of the container and arrival of SKULPTOR, the vessel's agent prepared a Bill of Lading[1] and hired Shippers Stevedoring, Inc., to load the soft drink container on board SKULPTOR.

### Pepsi Cola Hits the Spot—On the Pavement

As one of the Stevedore's employees was lifting the container, with the use of a forklift, he negligently dropped it.[2] By our calculations, 42,120 cans of soft drinks crashed to the ground, never a thirst to quench. In the Crush, the cans were damaged. The stevedore, no doubt, was in no mood to have a Coke and a smile.

### Dr. Pepper at 10, 2 and § 1304

Croft & Scully sued Goodpasture, Shippers Stevedoring, and SKULPTOR and her owners to pick up the Tab for its damages. The District Court dismissed the suit as to Goodpasture because it had no agency relationship with Shippers Stevedoring. Relying upon a so-called Himalaya Clause in the Bill of Lading[3], it granted the remaining defendants' motion for summary judgment and, finding that the container constituted a "package" within the meaning of § 4(5) of COGSA,[4] limited Shippers Stevedoring's liability to $500. Croft & Scully appeals. Things Go Better on appeal, and we reverse and remand.

### A Peek at the Himalaya Clause

Croft & Scully asserts that the Himalaya Clause limiting recovery to $500 violates public policy. That claim fails to make the grade, given our decision in *Brown & Root v. M/V PEISANDER*, 648 F.2d 415, —— A.M.C. —— (5th Cir. 1981), upholding such a clause. Indeed, the conflict which we surmounted there does not even arise in this case.[5] Clause 17 of the Bill of Lading makes clear provision for an increased valuation at a higher freight rate.[6] A more unequivocal declaration, in fact, one could not find. As Croft & Scully

---

1. The Bill of Lading described the container's contents as follows: "20' CONTAINER STC *: 1755 CASES DELAWARE PUNCH."

   * In maritimese STC stands for "said to contain".

2. The parties stipulated to the stevedore's negligence.

3. *See Brown & Root v. M/V Peisander*, 648 F.2d 415 (5th Cir. 1981) for an explanation of the origins of the term "Himalaya Clause".

4. § 1304(5) states:

   Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . or, in case of goods not shipped in packages, per customary freight unit . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier. . . .

5. *PEISANDER* involved an alleged conflict between COGSA and the Bill of Lading, which

stated that the responsibility of the carrier shall "in no case . . . exceed the amount of $500 per unit per package." 648 F.2d at 421, —— A.M.C. at ——.

6. Clause 17:

   In case of any loss or damage to or in connection with goods exceeding in actual value $500.00 . . . per package, or, in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500.00 per package or per unit, on which basis the freight is adjusted, and the carrier's liability, if any, shall be determined on the basis of a value of $500.00 per package . . . *unless the nature of the goods and a valuation higher than $500 shall have been declared in writing by the shipper* upon delivery to the Carrier *and inserted in this bill of lading* and extra freight paid if required and in such cases . . . the Carrier's liability, if any, shall not exceed the declared value. . . . The limitations of liability and other provisions contained in this article shall inure not only to the benefit of the carrier, its agents, servants and employees, *but also to the benefit of any independent contractor*

could have availed itself of extra loss or damage protection but chose not to, the District Court correctly ruled that the Himalaya Clause applied.

### Don't Judge The Package By Its Appearance

Even if liability is limited to $500 per package, Croft & Scully argues, the cardboard cases of soft drinks rather than the 20-foot container should constitute the relevant "package". Shippers Stevedoring responds with equal fervor that the container is the "package". Their argument, we think, given the recent decision in *Allstate Insurance Co. v. Inversiones Navieras Imparca*, 646 F.2d 169, —— A.M.C. —— (5th Cir. 1981), holds no water, carbonated or otherwise.

▮▮▮ We begin by pointing out that COGSA does not apply by its own force and effect, since the incident occurred in the yard and not on the vessel.[7] Rather, the Bill of Lading incorporates COGSA.[8] Thus, its provisions are merely terms of the contract of carriage which, like any other contractual terms, call out for judicial interpretation in case of dispute. *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico*, 607 F.2d 322, 1979 A.M.C. 2772 (4th Cir. 1979):

> We have held that when COGSA does not apply of its own force but is incorporated into a maritime contract by reference, it does not have 'statute rank'; rather, it is merely part of the contract, a term like any other.... In *Pannell v. United States Lines Co.*, 263 F.2d 497, 498 (2nd Cir.), *cert. denied*, 359 U.S. 1013 [, 79 S.Ct.

1151, 3 L.Ed.2d 1037] (1959), the ... Second Circuit held that when COGSA does not apply *ex proprio vigore*, effect should be given to the parties' definition of package even if that definition is contrary to that which would control if COGSA were directly applicable.

607 F.2d at 325, 1979 A.M.C. at 2776. In *Pannell*, the Court explained: "Where a statute is incorporated by reference its provisions are merely terms of the contract evidenced by the bill of lading." 263 F.2d at 498, 1959 A.M.C. at 936; *see also General Motors Corp. v. Pennsylvania Railroad Co.*, 357 F.Supp. 646, 651 n.6 (S.D.N.Y.1973); *U. S. v. Central Gulf Steamship Co.*, 340 F.Supp. 473, 479 (E.D.La.), *aff'd.*, 456 F.2d 1281 (5th Cir. 1972).

The District Court further observed that the Fifth Circuit had not established a test to determine what constitutes a "package" under COGSA. Since the date of its order, this Court has formulated such a test in whose good hands the parties—and the District Court—must rest.

*Allstate* involved the loss of 341 cartons of stereo equipment. The shipper loaded the cartons inside a container, sealed it, and had its agent deliver it to the carrier. The carrier issued a Bill of Lading which described the contents both in number and in kind.[9] When the container arrived in Venezuela, it was as empty as a can of soda on a hot summer day. The shipper sought recovery for its full damages, but the carrier, relying on COGSA, sought shelter in the $500 limitation. Although the District Court concluded that the container was the

---

performing services *including stevedoring* in connection with goods hereunder. (emphasis added)

**7.** Since the forklift accident that engendered this legal brouhaha did not occur upon the vessel, the incident does not come within COGSA § 1(e):

> The term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship.

*See Pan American World Airways v. California Stevedore & Ballast Co.*, 559 F.2d 1173, 1177 n.5 (9th Cir. 1977) (COGSA applies "from the time the ship's tackle is hooked onto the cargo

at the port of loading until the time when cargo is released from the tackle at the port of discharge").

**8.** Clause 1 of the Bill of Lading here involved provides that COGSA shall govern "before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier."

**9.** The Bill of Lading described the cargo as "One 20′ Ft. Container with 341 Cartons" and as "One 20′ Container said to contain electronic radio apparatus". 646 F.2d at 170.

COGSA package, the winds of judicial change Schwepped away the $500 shelter and exposed the carrier to full liability.

Judge Anderson, writing for the Court, after reviewing the history of COGSA and decisions in other Circuits, found that each stereo carton was a discrete "package". He based his decision on a case in the Second Circuit, *Mitsui & Co. v. American Export Lines*, 636 F.2d 807, —— A.M.C. —— (2nd Cir. 1981). There Judge Friendly expressly rejected as unworkable and unsound the old "functional economics" test,[10] propounded in *Royal Typewriter Co., Division of Litton Business Systems Inc. v. M/V Kulmerland*, 483 F.2d 645, 1974 A.M.C. 1784 (2nd Cir. 1973). Instead, relying on dicta in *Leather's Best, Inc. v. SS Mormaclynx*, 451 F.2d 800, 815, 1971 A.M.C. 2383, 2402 (2nd Cir. 1971), he looked to see whether the carrier had clear, unequivocal notice of the container's contents:

> Clearly the goal of international uniformity is better served by the approach in *Leather's Best* that generally a container supplied by the carrier is not a COGSA package if its contents and the number of packages or units are disclosed.

636 F.2d at 821, —— A.M.C. at ——.

■ We find nothing in the Bill of Lading to indicate that the contracting parties intended some special meaning of the term "package". Since Croft & Scully included information about the contents of the container and their number, *Allstate* governs. Therefore, the District Court erred in granting summary judgment on the "package" issue.

### Customary Freight Unit

Even if the container was not a COGSA "package", Shippers Stevedoring contends, the Court should uphold the $500 award because the container was a "customary freight unit" within the ambit of § 4(5) of COGSA, and thus the Himalaya Clause still applies. At the outset, we reject Croft & Scully's argument that Shippers Stevedoring waived this point in the trial below.[11] The District Court, of course, never considered the issue, given its conclusion that the container was a "package", but in the light of our decision that *Allstate* supercedes the District Court's finding, we must necessarily address this claim.

Turning to other Courts' interpretations of this clause, we find few cases but a fairly definite rule. In *Waterman S.S. Corp. v. United States S. R. & M. Co.*, 155 F.2d 687, 1946 A.M.C. 997 (5th Cir.), *cert. denied*, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946), the earliest case in this Circuit, the Court, citing *The Bill*, 55 F.Supp. 780, 783, 1944 A.M.C. 883 (D.Md.1944), *aff'd, Lorentzen v. Brazil Oiticica, Inc.*, 145 F.2d 470 (4th Cir. 1944), held:

> [T]he phrase 'per customary freight unit' in this context in the light of its legislative history, refers to the *unit of quantity, weight or measurement* of the cargo customarily used as the basis for the calculation of the freight rate to be charged. Generally, in marine contracts, the word 'freight' is used to denote remuneration or reward for carriage of goods by ship, rather than the goods themselves....

155 F.2d at 693, 1944 A.M.C. at 887 [citations omitted and emphasis supplied].

*Caterpillar Americas Co. v. S/S Sea Roads*, 231 F.Supp. 647, 1964 A.M.C. 2646 (S.D.Fla.1964), *aff'd*, 364 F.2d 829 (5th Cir. 1966), held that the "customary freight

---

**10.** That test, which lingered beyond its time as a Sprite disrupting the admiralty for some years, looks to see whether the goods as packaged prior to shipping were "functional", i. e. fit for shipping and transport individually as packed. It necessitated much judicial guessing work, and we are well rid of it.

**11.** Shippers Stevedoring argued to the District Court that the container was a COGSA package, and the Court agreed. As a result, it never reached Shippers Stevedoring's alternative argument that the container constituted a "customary freight unit". Although Shippers Stevedoring did not raise this point in its brief in support of summary judgment, it devoted several pages to that argument in its Reply to Plaintiffs' Supplemental Brief, filed with the District Court on August 19, 1980, prior to the Court's ruling. The briefs on appeal specifically raised the question (Appellee's brief at 29–32), and the issue is now properly before us.

**1282**

unit" was a tractor and its parts rather than hundredweight units, "regardless of the harshness or seeming illogic of such a result":

> With respect to the words 'customary freight unit', the authorities are conclusive that this phrase refers to the *unit upon which the charge for freight is computed* and not to the physical shipping unit. As thus construed, the statute gives the court the task of determining what unit was actually used by the carrier for computing the freight charge on the shipment in question. Under the statute the freight unit, if one exists, will control the question of limitation of liability, unless the freight unit employed was a mere sham, and, therefore, not a 'customary' unit within the meaning of the statute.

231 F.Supp. at 649–650, 1964 A.M.C. at 2648. *Accord, General Motors Corporation v. S/S Mormacoak*, 327 F.Supp. 666, 669, 1971 A.M.C. 2647 (S.D.N.Y.1971), *aff'd.*, 451 F.2d 24 (2nd Cir. 1971) (entire power plant was the customary freight unit).

■ From these cases, we deduce that "customary freight unit" is a question of fact that will vary from contract to contract. Of particular importance in this as in any contractual dispute, then, is the parties' intent, as expressed in the Bill of Lading, applicable tariff, and perhaps elsewhere. Indeed, the District Court so recognized: "Further, consideration of the intent of the parties is particularly, although not exclusively, appropriate where, as in the instant cause, COGSA does not apply of its own force." 508 F.Supp. at 683.

■ Although Croft & Scully admitted that the freight charge was $2200, calculated on a "flat container rate", we do not know how the parties arrived at that rate. Does it depend upon the contents, weight, value, custom of the trade, applicable tariffs, if any, or other factors? The District Court must consider these questions on remand. If it finds that the container was a "customary freight unit", then the Court should reinstate the $500 limitation of liability. If not, then it should hold further

proceedings to determine the amount of damages. We, of course, express no opinion concerning the outcome.

### Recap

We affirm the District Court's dismissal of Goodpasture and its conclusion that the Himalaya Clause applies. We reverse its grant of summary judgment for Shippers Stevedoring and its finding that the steel container was a COGSA package. As the District Judge never reached the important factual question whether the container of soft drink cartons was a "customary freight unit", we remand for further inquiry into the facts and for consideration of the parties' intent, factors that will guide the trial Court in determining the meaning of that COGSA clause.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.