### In re M.V. FLOREANA.

### No. Civ.A. H–98–3283.

United States District Court,
S.D. Texas.

Sept. 10, 1999.

James Patrick Cooney, Royston Rayzor Vickery & Williams, Houston, TX, Charles F Herd, Jr, John Carl Cunningham, Rice Fowler, Houston, TX, for Inmar Shipping Company for Limitation of Liability as Owner of the M.V. Floreana, plaintiff.

Charles F Herd, Jr, Rice Fowler, Houston, TX, for Compania de Seguros La Union, intervenor-plaintiff.

Charles F Herd, Jr, Rice Fowler, Houston, TX, for Marcelo Arcos Astudillo, IESC Corp., defendants.

Daniel B Shilliday, Vinson & Elkins, Houston, TX, for Port of Houston Authority, defendant.

Ben L Aderholt, Chamberlain Hrdlicka et al, Houston, TX, for Foreign Trade Export Packing, Worldwide Export Services Inc, defendants.

Christine Kirchner, Chamberlain Hrdicka White, Williams and Martin, Houston, TX, for Starkteq Inc, defendant.

George Francis Chandler, III, Hill Rivkins Hayden, Houston, TX, for Champion Technologies Inc, Texaco International Trader Inc, Ferconsa CA, City Investing Co., Ltd., defendants.

Michael Bush, Attorney at Law, New Orleans, LA, for BACA International Inc, defendant.

James R Koecher, Brown Sims Wise & White, Houston, TX, for Fritz Transportation International, Elite International Transportation Inc, WTS of Houston, Inc., defendants.

Robert J Ryniker, Bell Ryniker & Letourneau, Houston, TX, for Coastal Cargo of Texas Inc, consolidated defendant.

Edward Donald Burbach, Griggs & Harrison, Houston, TX, Robert J Ryniker, Bell Ryniker & Letourneau, Houston, TX, for Orion Transport LTD, consolidated defendant.

George Francis Chandler, III, Hill Rivkins Hayden, Houston, TX, for Importada Comercial Lartizco CIA LTDA, claimant.

Kerry Charles Williams, Chamberlain Hrdlicka White, Williams Martin, Houston, TX, for Petroecuador–Houston, movant.

Stephen B Schulte, Keith & Weber, Kerrville, TX, for Inc. Armstrong World Indu, movant.

Charles F Herd, Jr, Rice Fowler, Houston, TX, for La Union Compania Nacional de Seguros SA, movant.

Michael A Orlando, Meyer Orlando & Evans, Houston, TX, for EPG/Lloyd's Underwriters, movant.

Daniel B Shilliday, Vinson & Elkins, Houston, TX, for Port of Houston Authority, cross-claimant.

Charles F Herd, Jr, Rice Fowler, Houston, TX, John Carl Cunningham, Rice Fowler, Houston, TX, for Inmar Shipping Company for Limitation of Liability as Owner of the M.V. Floreana, cross-defendant.

Robert C Oliver, Sharpe and Oliver, Houston, TX, for Associated Petroleum Services Inc, GE Packaged Power Systems Inc., Stewart & Stevenson, Tril Export Corp. of PR, Halliburton Energy Services, Halliburton Global Ltd., claimants.

Christine Kirchner, Chamberlain Hrdicka White, Williams and Martin, Houston, TX, for Starkteq Inc, cross-claimant.

Stan F Nelson, Pikoff and Nelson, Houston, TX, for Dailey International Incorporated, World Commerce FWRDG, BJ Services International, Centrilift, a Baker Hughes Company, WTS of Houston Inc, Helmerich & Payne International Drilling Company, claimants.

George Francis Chandler, III, Hill Rivkins Hayden, Houston, TX, for Empresa Estatel Petroleos Del Ecuador, claimant.

Gregory S Meece, Thompson & Knight, Houston, TX, for Ashland Plastics Int, Valvoline Intern., Inc., claimants.

Frank Edward Billings, Billings & Solomon, Houston, TX, for Saga Transport (USA) Inc, claimant.

Robert C Oliver, Sharpe and Oliver, Houston, TX, for Betzdearborn International Inc, claimant.

## Opinion on Cargo Claims

HUGHES, District Judge.

### 1. *Introduction.*

Shippers contracted for the carriage of goods by ship from Houston to Esmeraldas and Guayaquil, Ecuador. While the stevedore was loading the vessel, it capsized. The ship now seeks to limit its liability to the shippers.

### 2. *Federal Law.*

Federal law applies to every contract for carriage of goods by sea to or from ports of the United States. One effect of the law is that the carrier's liability is limited to $500 per package. The shipper may declare a higher value and pay an adjusted freight rate. This limit applies only if the shipper has notice of its opportunity to declare higher value of the cargo. Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300, § 1304(5); *Brown & Root, Inc. v. M.V. Peisander,* 648 F.2d 415 (5th Cir.1981).

### 3. *Application & Notice.*

The shippers' agreements with the *Floreana* were for the carriage of goods by sea from Houston to Esmeraldas and Guayaquil, making the American act apply. Notice to the shipper that liability is limited is customarily given by an express reference to COGSA in the bill of lading, as was done in this case. The shippers regularly deal in carriage by sea and know of their rights to declare a higher value. They had notice.

### 4. *Opportunity.*

When a shipper negotiates with a carrier, the shipper always has the opportunity to specify the terms of carriage. The shipper is always free to disclose the character and value of the cargo.

The federal law that limits a carrier at sea to modest damages serves to keep shippers of high-value cargo from imposing part of their costs for risk of loss on the shippers of low-value cargo. Requiring high-value cargo to pay premium rates to compensate the carrier for its increased risk of loss simply makes the high-value shippers bear the full cost of their carriage. Hardly unjust.

If a shipper has cargo that exceeds the limit in the law, it has two choices. It can declare a higher value and pay the higher, value-adjusted freight rate, or it can acquire insurance for the excess value from a third-party insurer. These shippers want low freight and full indemnity.

Customarily, a bill of lading offers the shipper with the practical opportunity to declare a higher value of its cargo. In this instance, the shippers say that they did not have an opportunity to declare a high value because the ship sank before the bills of lading were issued. In the context of ocean carriage, however, the shippers' opportunity to declare a value does not begin with the issuance of a bill of lading.

If the shippers intended to declare a high value on the bills, then they had some purchase order to the shipping broker, instructions to an agent at the port, connecting way bills, or other evidence of this intention before the cargo was swung aboard. To determine whether this intention had been manifest, the court ordered the shippers to disclose documents that showed a plan to declare a high value to the carrier or to pay a premium freight rate. They had no documents. Nothing suggests that the shippers had an agent at the dock waiting to declare a value when the mate handed him the bills, with only the ship's catastrophic loss preventing the declaration.

Parenthetically, one form of evidence of the shipper's independent valuation would be third-party insurance policies obtained on the shipment. None of those was disclosed.

In addition to the absence of evidence of intent, the shippers had an opportunity to declare a high value at all moments leading to and during the loading. The clerical operation of preparing the bills—complet-

ed elsewhere well before loading—had been done based in part on the data furnished by the shippers, yet none had specific information about monetary value.

### 5. *Deviation.*

■ Under maritime law, a fundamental breach of the contract of carriage invalidates the limits in it against the shipper. If the ship makes an unreasonable deviation in her route, it is a fundamental breach. *See* 36 U.S.C.App. § 1304(4). In the absence of permission in the contract, the carrier may breach the contract by unreasonably substituting one ship for another in mid-voyage, voiding the limitations against the shipper. *See Yang Machine Tool Co. v. Sea–Land Service, Inc.,* 58 F.3d 1350 (9th Cir.1995).

■ The shippers say that they agreed with the owner to carriage on the M.V. *Baltimar Saturn*—not the *Floreana.* They urge that the substitution of an unknown vessel is an unreasonable deviation. The bills of lading say that the carrier may substitute vessels at a way port if the carrier believes it is inadvisable to proceed in the original vessel. One could infer that permission for mid-voyage substitution includes initial substitution because initial substitution is less risky than mid-voyage changes (no reloading, for instance). A substitution at the original port is not necessarily a deviation, and the shippers have identified nothing about these two vessels—other than the knowledge of what happened—as a distinct lessening in class of vessel between the two. *See Iligan Integrated Steel Mills, Inc. v. S.S. John Weyerhaeuser,* 507 F.2d 68, 72 (2d Cir. 1974).

- Associated Petroleum Services, Inc.: 5 packages
- BJ Services International: .1 package
- Centrilift: 8 packages
- Dailey International, Inc.: 3 packages
- GE Packaged Power Services: 5 packages
- Halliburton Company: 8 packages
- Helmerich & Payne: 14 packages.

■ The claimants say that the substitution is unreasonable because the *Floreana* was old, small, and unreliable. In short, they say, the *Floreana* is unseaworthy. Substitution of an unseaworthy vessel is not a deviation; it is a breach of the implied warranty of seaworthiness. *Id.* at 73. The shippers cannot convert a common breach of warranty into a fundamental breach of the whole contract of carriage under the label deviation.

### 6. *Owner & Stevedore.*

Federal law limits the liability of carriers. Carrier includes owners and charterers who contract carriage with a shipper. *See* 46 U.S.C App. § 1301. Orion Transport, Ltd., is a carrier. It contracted for carriage with the cargo claimants. As the owner of the *Floreana,* Inmar Shipping Company is a carrier. It chartered the vessel to Orion, and it issued the bills of lading for the ship owner, Inmar.

■ Some claimants object to the extension of the liability limitation to Coastal Cargo of Texas, Inc., the stevedore. The bills of lading say that the benefits of federal law's limitation extends to the carrier's servants, agents, stevedores, contractors, and other employees of the carrier. Coastal was hired by Orion as a stevedore, and the limit applies to its liability.

### 7. *Undisputed Numbers.*

Having determined that Orion, Coastal, and Inmar have the benefit of the liability limit, the liability for each package is limited to $500. Under the bills of lading, the packages for each cargo claimant are:

8. *Disputes.*

Petroecuador–Empresa Estatel claims that the bills of lading attributed to Saga Transport (U.S.A.), Inc., are actually its own. That is not indicated on bills HE–13 and HE–14. While Saga Transport has not disputed this claim, the claims remain Saga Transport's, and if it does owe them to Petro, it may confirm that with a written assignment of its interest to Petro. The number of packages for Saga Transport is 7 and for Petroecuador, 12. The 40 bundles of pipe referred to in HE–13 are also limited to a value of $500 per bundle. *See Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807 (2d Cir.1981).

Champion Technologies, Inc., claims that its tanks are not subject to the limitation because they are in bulk. Bulk goods are not limited, but these tanks are not bulk; they are "containerized" and just happen to have fluid contents. If the liquid cargo had filled the hold—the ship's own tanks—it would be a shipment in bulk. Champion's seven packages (one pallet, five tanks, one crate) are limited to $500 each.

City Investing Co. claims that the ship missed a bill of 104 pallets. Adding missing bill HE–19 to HE–18, the total packages is 113 (104 pallets, 7 boxes, 2 bundles). The 137 bundles of pipe and the 237 pieces of pipe in HE–18 are also limited to $500 per bundle or piece.

Ferconsa C.A. claims that the 28 packages in a container on bill GYE–10 should be considered as 28 packages rather than as one. When a bill of lading discloses the number of separate packages within a container, then the number of packages is the contents, not the container. *See Croft & Scully Co. v. M.V. Skulptor Vuchetich,* 664 F.2d 1277 (5th Cir.1982). The number of packages for Ferconsa is 28.

The same analysis applies for Texaco International Trader's claims. The two containers of 78 drums are not the packages. The drum is the package, so Texaco has 156.

Tril Export claims that the six numbered containers listed on the bill of lading actually contained 4,200 bags of resin, but the bill does not disclose this. Tril is restricted to its disclosure; it has six packages.

9. *Conclusion.*

The package limitation of liability of federal maritime law applies to the bills of lading from the *Floreana's* last voyage.