**BROWN & ROOT, INC.,**
Plaintiff-Appellant,

v.

**M/V PEISANDER, etc., et al.,**
Defendants-Appellees.

No. 77–3277.

United States Court of Appeals,
Fifth Circuit.

June 19, 1981.

W. D. Nelson, Houston, Tex., John T. Kochendorfer, New York City, for plaintiff-appellant.

John K. Meyer, Houston, Tex., for defendants-appellees.

Before JONES, BROWN and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question in this case is whether the $500 package limitation provided in the Carriage of Goods by Sea Act (COGSA) limits the recovery of a shipper against a stevedore when the bill of lading incorporating COGSA expressly states that "in no case" will recovery exceed $500, but the applicable tariff, obliquely referred to in the bill of lading (B/L) establishes a means to obtain increased liability by payment of a specified additional transportation charge.

### What's It All About?

This case was tried in the District Court on a stipulated set of facts. As the stipulations reveal,[1] Brown & Root (Shipper) deliv-

---

1. The stipulation identified the vessel interests as China Mutual Steam Navigation Co., Ltd., the shipowner, and Barber Blue Sea Line, bareboat charterer, the "Carrier" under COGSA and the B/L. By a contract between the Stevedore and the vessel interests, the Stevedore was engaged to load cargo aboard M/V Peisander.

The crated cargo was in the custody of the vessel interests on the dock awaiting loading aboard M/V Peisander. While moving the crate by forklift toward shipside, the cargo fell

ered a crate of machinery on December 24, 1974, to the dock in Houston. Young & Co. of Houston (Stevedore) was the contracting Stevedore. The crate was to be loaded aboard M/V Peisander, owned by China Mutual Steam Navigation Co., Ltd. and operated by Barber Blue Sea Line (Carrier). Unfortunately, the forklift truck operated by Stevedore dropped the crate while transporting it toward shipside. The damage amounted to $56,048.75.

All the parties agree that the Stevedore was at fault. Yet the parties disagree[2] on the extent of the Stevedore's liability in dollars and cents—the difference exceeds $55,000.

Whatever the ultimate legal conclusion about the application and significance of the tariff, the parties stipulated also that

the cargo interest did not declare any value and, for whatever it's worth, Shipper "had shipped frequently in the past ... and shipped frequently after this occurrence with Barber Blue Sea Line ..." but had not "on any of these occasions declared any value."

## Scaling The Himalaya

The principal controversy below was whether the Stevedore could claim the benefit of the $500 COGSA limitation. This in turn depends on the validity and application of that clause which, following the tradition of the admiralty that speaks in terms of the "Jason clause"[3] and the "Inchmaree clause"[4], is attributed universally, but nevertheless quite erroneously, to the Himalaya.[5] Ironically, the Carrier here ex-

---

off the forklift and was badly damaged. At that time "relations between the vessel interest ... and the cargo interest ... were governed by the Barber Blue Sea Line tariff and by the Barber Blue Sea Line bill of lading attached as Exhibit D...."

The stipulation, ¶ 7, expressly stated that "... Barber Blue Sea Line had a properly established tariff on file with the Federal Maritime Commission ... which included the provisions ... in Exhibits A, B and C...."

**2.** The stipulation, ¶ 6, see note 1, supra, concluded:

The parties disagree as to whether relations between the cargo interest ... and ... Young [the Stevedore] were governed by said tariff and bill of lading.

**3.** The Jason, 225 U.S. 32, 32 S.Ct. 560, 56 L.Ed. 969 (1912).

**4.** Thames & Mersey Marine Ins. Co. v. Hamilton, Fraser & Co., 12 App.Cas. 484 (1887).

**5.** Healy, in Note, Carriage of Goods by Sea: Application of the Himalaya Clause to Subdelegees of the Carrier, II MARITIME LAWYER 91, 111 (1977), traces this peculiar attribution:

An exculpatory or other beneficial clause which seeks to extend to noncarriers, partial immunity or other protections afforded to the carrier by the bill of lading is popularly known to the admiralty bar as a Himalaya clause. This misnomer derives from an earlier British case involving the vessel Himalaya, Adler v. Dickson, which—somewhat surprisingly had no connection whatever with the carriage of goods by sea. Rather, Adler concerned an exonerating clause preprinted on a ticket issued to the plaintiff, a passenger on a

Mediterranean cruise ship. While the vessel was temporarily berthed at Trieste, in the course of the cruise, Mrs. Adler had the great misfortune to tumble headfirst from the gangway to the wharf, sustaining serious injuries. She had the further misfortune to be unequivocally barred from suit against the shipowners under relevant English law because of the following language printed on her ticket, which constituted the contract between her and the carrier:

The company will not be responsible for and shall be exempt from all liability in respect of any . . . injury whatsoever from all liability in respect of any . . . injury whatsoever of or to the person of any passenger . . . whether such injury of or to the person of any passenger . . . shall occur on land, on shipboard, or elsewhere . . . and whether the same shall arise from or be occasioned by the negligence of the company's servants on board the ship or on land in the discharge of their duties, or while the passenger is embarking or disembarking, or whether by the negligence of other persons directly or indirectly in the employment or service of the company, or otherwise, or by the Act of God . . . dangers of the seas . . . or by accidents . . . or any acts, defaults or negligence of the . . . master, . . . mariners . . . company's agents or servants of any kind under any circumstances whatsoever.

With that great ingenuity for which the admiralty bar is renowned, however, Mrs. Adler's counsel successfully brought an action in negligence against the master and boatswain of the ship, ultimately overcoming vociferous argument by the defendants that

pressly repeated this popular misnomer in the stipulated B/L clause 3, "Identity of Carrier and Himalaya Clause," which provided that "all defenses under the B/L shall inure to the benefit of the Carrier's agents [and] any independent contractor, including Stevedores, performing any of the Carrier's obligations under the contract of carriage [6] ...." As we shall see later, it takes many Sherpas to carry away the Himalaya.

Although the matter is not completely free of doubt, because Shipper's final brief to the trial court on the merits concluded that judgment "... should be entered for [Shipper] against all three defendants [vessel interests and Stevedore] jointly and severely, in the amount of $56,048.75," the parties were focusing primarily on the liability of Stevedore, not the Carrier, for

unlimited damage. So intent were the parties that the formal stipulation, providing, first, that the Stevedore is liable for $56,-048.75 "unless its liability is limited to $500," went on to provide that if it maintained its Himalaya defense, judgment should be entered for Shipper against all defendants in the sum of $500, but if that defense is rejected, judgment should be entered for Shipper against Stevedore for the full amount but in favor of Shipper against the Carrier in the amount of $500.[7]

Indeed, as we read the stipulation, it was the purpose of the parties in the event Stevedore lost on Himalaya to impose the full burden on Stevedore since even the limited liability of the Carrier for $500 was conditioned on the financial inability of Stevedore to pay the full sum.

---

**6.** because the injury occurred allegedly as a result of acts committed in the course and scope of their duties, and by virtue of their employment with the company, designating them servants, they should be entitled to that same protection afforded to the company by the terms of the ticket. Defendants made the further, or alternative, claim that the company, in contracting with its passengers, acted in all material respects as the agents of its servants and agents, including its master and boatswain. Thus, the company and its employees were characterized at one and the same time as both principal and agent or servant, each in regard to the other.

While both these contentions are soundly rejected, a majority of the court did advance the opinion that it was the failure of the contract to expressly include the company's agents and servants in the immunity provisions favoring the company that was fatal to defendants' contentions. One justice felt strongly that even if the contract had contained express language nominating the company's employees as beneficiaries of the exonerating clause, it would have nevertheless been ineffective because they were not parties to the contract. In thus reaching its conclusion that Mrs. Adler was not barred from suing her chosen defendants, the court distinguished an adverse decision by the House of Lords, *Elder Dempster & Co. Ltd. v. Paterson, Zachonis & Co. Ltd.* on the basis that that case involved damage to cargo under a bill of lading rather than personal injury to a passenger having purchased a ticket to cruise the Mediterranean. (Citations omitted).

**6.** 3. Identity of Carrier and Himalaya Clause.

The contract evidenced by this B/L is between the Merchant and the Owner of the ocean vessel named herein (or substitute) and it is therefore agreed that said Shipown-

er only shall be liable as Carrier under this contract, if, however, it shall be adjudged that any other is the Carrier, all defences, including all limitations of and exonerations from liability, provided to the Carrier by law or by this B/L shall be available to such other.

All defences under this B/L shall inure to the benefit of the Carrier's agents, servants and employees and of any independent contractor, including stevedores, performing any of the Carrier's obligations under the contract of carriage or acting as bailee of the goods, whether sued in contract or in tort.

For the purpose of this clause all such persons, firms or legal entities as alluded to above shall be deemed to be parties to the contract evidenced by this B/L and the person, firm or legal entity signing this B/L shall be deemed to be their agent or trustee.

**7.** 11. Defendant Young & Co. is liable for such amount unless its liability is limited to $500.00.

12. In the event the Court decides in favor of Defendant Young & Co., judgment should be entered in favor of plaintiff and against all defendants, jointly and severely, in the sum of $500.00. In the event the Court decides in favor of plaintiff, judgment should be entered in favor of plaintiff and against Defendant Young & Co. of Houston in the amount of $56,048.75, and in favor of plaintiff and against Defendants China Mutual Steam Navigation Company, Ltd. and Barber Blue Sea Line in the amount of $500.00, jointly and severely, and such judgment against China Mutual Steam Navigation Company, Ltd. and Barber Blue Sea Line to become operative only in the event the judgment against Young & Co. of Houston, Inc. remains unsatisfied to the extent of $500.00 or more, 90 days after it has become a final judgment.

Thus, in the trial court, except for the concluding demand for full recovery against Carrier and Stevedore, the attack was entirely on the right of Stevedore to a Himalaya $500 limitation.

### What's Before Us?

When the case came before us on appeal, things became quite different. Without the least deferential nod toward the specific stipulated limitation as to the Carrier (*see* note 7, *supra*), Shipper's brief contended specifically that the trial court "erred in allowing *defendants* [Carrier and Stevedore] to limit their liability to $500 per package, as *defendants* failed to meet their burden of establishing the validity of the package limitation . . ." and by prayer requested that the "judgment should be reversed and [Shipper] should be awarded recovery *in full* . . . against all *defendants*, both jointly and severely." This theme was sounded fervently on oral argument.

Both on argument and by formal brief, Carrier and Stevedore pointed out this marked change in theory between that asserted at the trial and in this Court. As they say it, Shipper went on the theory that Carrier was entitled to limit its liability but not Stevedore. No contention was made below by Shipper that the COGSA limitation was unavailable to Carrier because of any deficiency in the B/L clause.

This change of heart came about because of the intervening decision of the Ninth Circuit in *Pan American World Airways, Inc. v. California Stevedore and Ballast Company*, 559 F.2d 1173, 1978 A.M.C. 1839 (9th Cir. 1977), which held under a substantially identical Barber Blue Sea Line B/L that the "in no case" language in clause 18 [8] made the limitation void, thus putting on the carrier the burden of establishing that the shipper had the choice of rates to attain increased valuation.

■ In view of the very precise stipulation (*see* note 7, *supra*), Shipper can complain of no error with respect to the judgment against Carrier. This Court has no right or power to modify the judgment as against the Carrier based, as it was, on this precise stipulation. An affirmance of that part of the judgment is therefore in order.

But what of the claim by Shipper against Stevedore? Here things are quite different. The stipulation on judgment *see* (¶ 12, note 7, *supra*) plainly states that if Stevedore succeeds in its Himalaya defense, judgment is to be entered against Stevedore and Carrier for $500; but if this defense fails for Stevedore, it is liable for the full damage sum of $56,048.75. More important, the stipulation (*see* ¶ 6, note 1, *supra*), after prescribing that as between Shipper and Carrier the bill of lading and the tariff governed, expressly provided that the "parties disagree as to whether relations between the cargo interest . . . and [Stevedore] . . . were governed by said tariff and bill of lading." Building on this, as it properly may, Shipper contends that, at most, all the Himalaya clause does is *extend* to Stevedore whatever and only such "defences" as Carrier has. This leads to the natural conclusion, with which we agree, that whatever rights Stevedore has to limit liability are necessarily limited to those which Carrier had. The next step is, therefore, that as between Shipper and Carrier the limitation was invalid, and if thus unavailable to Carrier it is automatically unavailable to Stevedore.

We therefore conclude that, in reviewing the judgment as between Shipper and Stevedore, we must necessarily face the question whether, absent the stipulation (*see* note 7, *supra*) Carrier could have validly limited its liability to $500.

This brings us face to face with Shipper's basic contention that Carrier's B/L (and the tariff) are legally deficient because, stated variously, the B/L did not expressly permit Shipper to indicate an increased valuation,

---

**8.** 18. Amount of Limitation.

The responsibility of the carrier shall *in no case*, whether governed by the U. S. Carriage of Goods by Sea Act, the Hague Rules or not, exceed the amount of $500.00 per package or customary freight unit (emphasis added).

This clause is identical in the Ninth Circuit and in our case.

there was no prescribed place or blank on the face of the bill of lading in which to indicate increased valuation, and possibly, the operation of the tariff was, in turn, conditioned on the deficient bill of lading.

### Finally To The Merits: The Clause Paramount

Because this determines the applicable law, it is important at the outset that by the stipulation Shipper and Carrier agreed that Carrier's usual B/L, which expressly incorporated the typical Clause Paramount [9] provided that the bill of lading should have effect subject to the provisions of COGSA, shall be deemed incorporated with nothing to be deemed a surrender of any rights or immunities or an increase in liabilities under that Act. This is expressly authorized by § 1312 of COGSA.[10]

9. 2. Paramount Clause.

This bill of lading shall have effect subject to the provisions of the Carrier of Goods by Sea Act ..., which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier.

10. COGSA, 46 U.S.C.A. § 1312, provides:

Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: *Provided, however,* That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter: *Provided further,* That every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea from ports of the United States, in foreign trade, shall contain a statement that it shall have effect subject to the provisions of this chapter.

11. COGSA, 46 U.S.C.A. § 1304(5) provides:
Amount of liability; valuation of cargo

With COGSA so expressly adopted, what does COGSA provide? The answer is simple and direct: $500 per package unless the nature and value of the goods have been declared by the *shipper*[11] and inserted in the bill of lading.

■ The Clause Paramount establishes three things of great significance in this case. First, it makes COGSA applicable before the goods are loaded on and at a time when COGSA would not apply of its own force. Second, COGSA is "deemed incorporated" in the bill of lading, and third, nothing in the bill of lading shall be deemed an increase in the carrier's liability under COGSA. More than that, when COGSA applies, it governs and overrules any clause of the bill of lading in conflict with the statute. *See, e. g., Shackman v. Cunard White Star, Ltd.,* 31 F.Supp. 948 (S.D.N.Y.

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

The requirement that the shipper be given the right to increase valuation above $500 was undoubtedly the congressional response to Supreme Court decisions which for well over a century consistently held that only when a common carrier grants its shippers a "fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." *New York, N. H. & H. R. v. Nothnagale,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500, 1507 (1953); *Union Pacific Railroad Company v. Burke,* 255 U.S. 317, 321–323, 41 S.Ct. 283, 285, 165 L.Ed. 656, 659 (1921); *The Kensington,* 183 U.S. 263, 22 S.Ct. 102, 46 L.Ed. 190 (1901); *Adams Express Co. v. Croninger,* 226 U.S. 491, 509, 33 S.Ct. 148, 153, 57 L.Ed. 314, 321 (1912); *Liverpool and Great Western Steam Company v. Phenix Insurance Company,* 129 U.S. 397, 442, 9 S.Ct. 469, 472, 32 L.Ed. 788, 792 (1889); *Hart v. Pennsylvania Railroad Company,* 112 U.S. 331, 343, 5 S.Ct. 151, 157, 28 L.Ed. 717, 722 (1884).

1940). A clause in the bill of lading was apparently in conflict with the statutory limitation. The Court, holding the statute to prevail, stated:

> In the instant case, the limitation clause is statutory, but just as much a part of the bill of lading as though physically in it, and just as much a part thereof as though placed therein by agreement of the parties.

31 F.Supp. at 950.[12]

Shipper, recognizing the existence and general application of the Clause Paramount and the express provision of § 1304(5) of COGSA, nevertheless contends that the $500 limitation is not available to Carrier and hence could not be extended to, nor could it "inure" to Stevedore. Shipper does this on two principal grounds. First, there is no place on the face of the B/L for the insertion of any increased valuation by Shipper. Second, and presumably more important, the terms of Carrier's B/L make no provision—indeed seem to assume that there can be none—for increase in valuation or limitation by simply stating that the responsibility of the carrier shall "... *in no case ... exceed the amount of $500 per unit per package ...* "[13] (emphasis added).

### Now Enters The Tariff

■ Considering that (i) a tariff validly filed is not a mere contract but is the law promulgating the applicable standard[14] and (ii) Shipper and Carrier stipulated that Carrier had "a properly established tariff on file with the Federal Maritime Commission ..." which included the stated provisions, it is plain that the terms of the tariff cut a big figure. The stipulated tariff provided that the measure of liability for cargo loss or damage would be that provided in the bill of lading (*see* note 12, *supra* ), and that this may be increased to a greater valuation at Shipper's request and declaration upon the payment of an additional charge of 5%.[15]

---

**12.** Judge Conger went on to add:

> As bearing on this question of the surrender of rights and increase of responsibility, the so-called Clause Paramount should be considered. It if has any meaning, if it has any value, if it is to be considered at all, one must come to the inevitable conclusion that the respondent [carrier] never intended to surrender any of its rights under the Act and, specifically, that it never intended to surrender any rights which it had under the limitation section, and never intended to enlarge its responsibilities thereunder.

31 F.Supp. at 951.

*See also, Pan Am. World Airways v. Calif. Stevedore & Exhaust Co.*, 559 F.2d 1173, 1175, n. 3, 1978 A.M.C. 1834 (9th Cir. 1977), in which the Court points out that since COGSA was made fully applicable, 46 U.S.C.A. § 1312, if any of the provisions of the bill of lading are in conflict with COGSA, those provisions are invalid. "... [I]f any of the provisions of the bill of lading are in conflict with COGSA those provisions are invalid." Gilmore & Black, Law of Admiralty, § 3.25 at 148 (2d ed. 1975); 559 F.2d at 1175, n. 3. *Cf. PPG Industries v. Ashland Oil Co.*, 527 F.2d 502, 506 (3d Cir. 1975); *Commonwealth Petrochemicals v. S/S Puerto Rico*, 607 F.2d 322, 325, 1978 A.M.C. 2153 (4th Cir. 1979).

**13.** *See* clause 18 of the bill of lading, note 8, *supra.*

**14.** *See, e. g., Carter v. American Telephone and Telegraph Co.*, 365 F.2d 486, 496 (5th Cir. 1966):

> First, a tariff, required by law to be filed, is not a mere contract. It is the law. *Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co.*, 303 F.2d 692, 696, n. 12 (5th Cir.), *cert. denied*, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962).

*Accord, United States v. Associated Air Transport, Inc.*, 275 F.2d 827, 833 (5th Cir. 1960) (rate regularly published is no longer merely the rate imposed by carrier, but becomes the rate imposed by law); *Crancer v. Lowden*, 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077 (1942) (tariffs bind both carriers and shippers with the force of law); *Atchison, T. & S. F. Ry. Co. v. City of Chicago*, 240 F.2d 930 (7th Cir.), *aff'd*, 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1957) (a tariff under provision is to be treated the same as a statute); *see also Empire Petroleum Co. v. Sinclair Pipeline Co.*, 282 F.2d 913 (10th Cir. 1960); *River Terminals Corp. v. Southwestern Sugar & Molasses Co.*, 253 F.2d 922 (5th Cir.), 1958 A.M.C. 1534, *aff'd*, 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334, *on remand*, 274 F.2d 36 (5th Cir.), 1960 A.M.C. 2064 (1960).

**15.** The tariff provided:

> (a) Where rates are specified herein in individual items as applying on an Ad Valorem basis, the value used in assessing freight charges shall be the value shown on a certified copy of the shipper's invoice which must accompany the ocean Bill of Lading at time of submission to the Carrier.

### Himalaya Is Alive In The Fifth

The problem started with *Robert C. Herd & Co., Inc., v. Krawill Machinery Corp.*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820, 1959 A.M.C. 879 (1959), in which, approving the Fourth Circuit's decision, the Court expressly repudiated our 1952 decision in *A. M. Collins & Co. v. Panama R. Co.*, 197 F.2d 893, 1952 A.M.C. 2054 (5th Cir. 1952), to hold that the $500 package limitation of COGSA is not, as such, available to a negligent Stevedore. After rejecting the Stevedore's contention that COGSA should apply to it, the Court addressed the alternative contention that, by the terms of the bill of lading, the limitation was extended to the stevedore. The Court's answer was essentially an analysis of the imprecision of the wording of the bill of lading which referred to "Carrier's liability" with no mention of stevedores or others. The Court summarized:

> There is, thus, nothing in those provisions to indicate that the contracting parties intended to limit the liability of stevedores or other agents of the carrier for damages caused by their negligence. If

such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract. Since they did not do so, it follows that the provisions of the bill of lading did 'not cut off [respondent's] remedy against the agent that did the wrongful act.' *Sloan Shipyards Corp. v. Emergency Fleet Corp.*, 258 U.S. 549, 568, 42 S.Ct. 386, 388, 66 L.Ed. 762.

359 U.S. at 302, 79 S.Ct. at 769, 3 L.Ed. at 824.

Treating this as an invitation to explore, if not exploit the latitude of the Court's words, scriveners—or those who by whatever name draft or redraft, occasionally by scissors and paste, terms of shipping documents—undertook by various ways to extend this and other COGSA limitations to contractors performing services for the ship or shipowner.[16]

The success of these efforts turn primarily on the precision of the language employed in identifying the non-shipowner beneficiaries and the COGSA limitations or exemptions sought to be extended.[17] This

---

(b) In the absence of any special declaration of value, the measure of liability of each carrier, as to the value of shipments at the rates herein provided shall be as provided for in such carriers regular Bill of Lading form. The measure of liability of the carrier may be increased to a greater valuation at shipper's request and upon declaration and entry of such greater valuation as provided in said Bill of Lading and payment of an additional charge of 5% of the total declared value in addition to the stipulated rates on the commodities shipped provided for herein in case of shipments to Penang, Port Swettenham, and Singapore and Bangkok. The minimum of such charge shall be $68.00 to Penang, Port Swettenham and Singapore and $72.75 to Bangkok.

Although the B/L did not refer specifically to these provisions, tariff clause 14 of the B/L entitled Freight and Charges provided in part:

(a) The Merchants' attention is drawn to the stipulations concerning ... other contingencies relative to freight and charges in the relevant conference tariff.

**16.** The Ninth Circuit characterized it:

We and other courts interpret this to mean that under certain circumstances parties to a contract of carriage may limit a stevedore's liability, but only if the intent to do so is clearly expressed. *Bernard Screen Printing*

*Corp. v. Meyer Line*, 464 F.2d 934, 936 (2d Cir. 1972), cert. denied, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); *Secrest Machine Corp. v. S. S. Tiber*, 450 F.2d 285, 286 (5th Cir. 1971); *Cabot Corp. v. S. S. Mormacscan*, 441 F.2d 476, 478 (2d Cir. 1971), cert. denied, 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971); *Dorsid Trading Co. v. S/S Fletero*, 342 F.Supp. 1, 6 (S.D.Tex.1972); *Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc.*, 275 F.Supp. 76, 78 (S.D.N.Y.), aff'd mem., 386 F.2d 839 (2d Cir. 1967), cert. denied, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968). *Tessler Brothers (B. C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 1974 A.M.C. 937 (9th Cir. 1974).

**17.** *See Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 1974 A.M.C. 1136 (9th Cir. 1974) (involving not only the $500 per package limitation, but the one-year statute of limitation); 46 U.S.C.A. § 1303(6) (unseaworthiness not caused by want of due diligence); 46 U.S.C.A. § 1304(1) (fire damage not caused by actual fault or privity); 46 U.S.C.A. § 1304(2)(b) (immunity for liability not caused by actual fault or privity); 46 U.S.C.A. § 1304(2)(q); 46 U.S.C.A. § 1304(2)(a) (errors in navigation); *Hanson & Orth, Inc., MGC Community Corp., et al. v. M/V Jalatarang*, 450 F.Supp. 528 (S.D.Ga.1978) (fire statute exemption).

must be done, of course, under the compunction of the Court's words that "contracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries . . . ," 359 U.S. at 305, 79 S.Ct. at 771, 3 L.Ed. at 825.

In the main, the Himalaya clause has been upheld by the various Courts of Appeals including the Fifth Circuit; *Secrest Machine Corp. v. SS Steamship Tiber*, 450 F.2d 285, 1971 A.M.C. 2332 (5th Cir. 1971), unlike some other cases,[18] extended the $500 per package limitation to a Stevedore under a clause which described the beneficiaries as "the Carrier's agents, servants and employees and of any *independent contractor . . .*" performing any of the carrier's obligations [19] (emphasis added).

Since the Himalaya clause (*see* note 6, *supra*) specifically describes the Stevedore as a beneficiary, and the tariff (*see* note 14, *supra*) expressly affords the opportunity for the shipper to secure an increased valuation by the payment of precisely defined additional freight, on what basis does Shipper contend that the $500 per package limitation is inapplicable?

Basically, Shipper relies on the "in no case" terminology in clause 18 of the B/L (*see* note 8, *supra* ). Added to that is the more recent decision by the Ninth Circuit in *Pan Am. World Airways v. California Stevedore & Ballast Co.*, 559 F.2d 1173, 1978 A.M.C. 1834 (9th Cir. 1977), involving a Barber Line bill of lading, clause 18 of which was identical with the clause 18 (*see* note 8, *supra*) before us. The carrier there, admitting that the bill of lading contained no space for an excess valuation declaration, argued primarily that there was no evidence that the shipper had ever attempted to declare a higher valuation, and therefore, under the Clause Paramount (*see* note 9, *supra*), § 1304(5) would apply by its own terms.

Agreeing with the lower court that *Tessler Bros. (BC) Ltd. v. Italpacific Line*, 494 F.2d 438, 1974 A.M.C. 937 (9th Cir. 1974), was controlling, the Court of Appeals quoted approvingly from the District Court's decision that, referring to *Tessler*, held:

That decision held that the language of COGSA § 4(5) regarding declaration of a higher value for goods and the language in the bill of lading to the same effect constituted prima facie evidence of an opportunity to avoid the limitation, and that the burden to prove otherwise was on the shipper. In the instant case, however, the limitation in Clause 18, which does not provide any opportunity for the shipper to declare higher value, . . . is so inconsistent with 46 USC § 1304(5) as to: (1) render the bill of lading provision null and void; (2) distinguish the instant action from *Tessler Bros.*; and (3) place on defendant the burden of proving that an opportunity did in fact exist for the shipper to avoid the limitation.

559 F.2d at 1176 (*quoting* unpublished District Court opinion).

The trial court then reached the climax by continuing this quotation:

Defendant having failed to carry this burden [item (3)] the Court finds and

---

**18.** *See, e. g., Rupp v. International Terminal Operating Co., Inc.*, 479 F.2d 674, 1973 A.M.C. 1093 (2d Cir. 1973) ("all persons rendering services" held not to include the Stevedore); *DeLaval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259, 1974 A.M.C. 1156 (3rd Cir. 1974) ("Bailee" held not to include Stevedore); *cf. Toyomenka, Inc. v. SS Tosaharu Maru*, 523 F.2d 518, 1975 A.M.C. 1820 (2d Cir. 1975) ("all . . . independent contractors used . . . by the carrier" does not include an independent contractor employed by the Stevedore; 2 *A. Benedict on Admiralty* § 169 (7th ed. 1977).

**19.** The Court stated:

The bill of lading executed between appellant [consignee] and carrier here expressly provided that all defenses available to carrier "shall inure to the benefit of the Carrier's agents, servants and employees and of any independent contractor performing any of the Carrier's obligations under the contract of carriage or acting as bailee of the goods, whether sued in contract or in tort." It is clear that the term "independent contractor" includes stevedores, and therefore the limitation defense is available to Strachan [stevedore].

450 F.2d at 287.

concludes that the benefit of the limitation is not available to defendant.

*Id.*

The Court of Appeals went on by reference to *The Kensington* (*see* note 10, *supra*), and stated that the Supreme Court had "found the arbitrary limitation, unaccompanied by any right to increase the amount by an adequate and reasonable proportional payment, void". 559 F.2d at 1176, *citing The Kensington*, 183 U.S. 263, 22 S.Ct. 102, 46 L.Ed. 190 (1902).

Both the trial court and the Court of Appeals having placed such reliance on *Tessler*, an examination of that case is both warranted and helpful. There the carrier "claimed that liability, if any, was limited to $500 under § 4(5) of ... COGSA ... and/or the terms of the bill of lading, which contained no declaration of value of the machine" 494 F.2d at 440. The Court, recognizing that a shipper must be afforded an opportunity to choose between a lower and unlimited valuation limitation stated that the shipper there "contends there is no evidence that the shipper was offered a choice of rates, one with the limitation and another without it." 494 F.2d at 443. The Court then pronounced:

> The provisions in the bill of lading and COGSA are prima facie evidence of the opportunity to avoid the limitation, however, and it is [shipper's] burden to prove that such an opportunity did not in fact exist. *Petition of Isbrandtsen Co.*, 201 F.2d 281, 285 (2d Cir. 1953) (shipper did not carry this burden).

494 F.2d at 443.

■ Even accepting the Ninth Circuit's treatment of the "in no case" language of clause 18, the circumstances of the case before us do not overcome the prima facie evidence of the opportunity for a choice of rates and valuations nor do they sustain Shipper's burden "to prove that such an opportunity did not in fact exist." 494 F.2d at 443. First, COGSA was expressly incorporated in the bill of lading to thereby bring into play § 4(5) (*see* note 10, *supra*).

Next, and more significantly, the published tariff which has the effect of law very carefully gave Shipper a choice of valuations by a choice of precisely definable freight rates (*see* note 14, *supra*).

This gave. Shipper the opportunity to choose between valuations by paying more or less freight. COGSA § 4(5) does not prescribe that the face of the bill of lading contain a specific space or blank in which the increased valuation is to be inserted nor does it provide that the carrier rather than the shipper must actually make the notation. The phrase "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading" clearly puts the burden on the Shipper to make the determination as between value limitations and the making of the declaration. *See W. TETLEY*, MARINE CARGO CLAIMS 442 (2d ed. 1978). Indeed, the stipulated bill of lading leaves ample space in the middle of the front page for "Description of Packages and Goods" under the heading of "Particulars Furnished by Shipper."

■ Within the prohibitory strictures of COGSA, the problem is essentially one of contract interpretation. On that approach, Shipper argues that in clause 18 of the B/L (*see* note 12, *supra*), the "in no case" language is so positive that it rules out any possibility of an increased amount, especially since it recites no opportunity for the declaration of an increased valuation. We hold that there are two answers to this literal reading. First, as we have earlier pointed out, the Clause Paramount of the B/L necessarily incorporates § 1304(5) of COGSA, which limits the amount to $500 unless the value has been declared by the Shipper (*see* note 10, *supra*) and the tariff (*see* note 14, *supra*) in the clearest of language affords the opportunity to increase the amount by declaring an increased valuation together with a precisely prescribed formula (5%) for the increased freight rate. Even without considering the supremacy of § 1304(5) of COGSA as prohibiting any less-

er advantage to Shipper,[20] the language of the B/L has at least to be read in the light of that incorporated language and, as such, the "in no case" wording is little more than an adaptation of the terms of § 1304(5), which speaks of the carrier not being liable "in any event." The negative element found "in no case" has therefore its equivalent in § 1304(5) with the words "neither" and "any" read together. In the presence of § 1304(5), which is expressly incorporated in the B/L, clause 18 can hardly be read as absolutely prohibiting the avoidance of the $500 limitation. And, of course, the incorporated § 1304(5) prescribes how and what person or party must take the action to increase the limitation amount.

But even if the "in no case" in clause 18 has to be read rigidly, literally and absolutely, the tariff, construed as it must be in the light of COGSA and by which Shipper and Carrier are alike bound, affords in simple terms an easy, effective opportunity for any shipper to increase loss/damage beyond $500 by a declaration of greater value and payment of an additional charge of 5% of the total declared value. As the tariff plainly affords the opportunity and prescribes the manner and the cost, the words "as provided in said Bill of Lading . . ." are not to be read as taking back the opportunity for increased valuation given by the tariff. Starting with the proposition of the binding character of the tariff, it certainly would not make good commercial sense to read the express grant of an opportunity to obtain increased valuation as existing only if the B/L permitted or did not prohibit it. At most, these words meant only that the increased valuation should be declared to the carrier by Shipper and somehow entered on the face of the B/L.

#### The End Of It All

In the final analysis what *Pan Am* stands for is that the "in no case" language of clause 18 relieves the shipper from dis-

proving availability of increased valuation. Accepting the holding that shipper does not have to *disprove*, the record is here clear that Carrier proved (by the tariff) the availability of choice of valuation.

The upshot is that the Trial Judge was correct in (i) upholding the validity and application of the Himalaya clause to Stevedore, (ii) extending to Stevedore the COG-SA $500 limitation, (iii) entering judgment against Stevedore in that amount, and (iv), on the stipulation, entering judgment for that sum against Carrier.

AFFIRMED.

---

**20.** *See Hanover Ins. Co. v. Shulman Transport Enterprises,* 581 F.2d 268, 272, nn. 7, 8, 1979

A.M.C. 520 (1st Cir. 1978).