849 F.2d 166
 1988 A.M.C. 2941
 COUTHINO, CARO AND COMPANY, INC., and Fireman's Fund
Insurance Company, Plaintiffs-Appellants, Cross-Appellees,
v.
M/V SAVA, her engines, tackle, etc., et al., Defendants,
Jugoslavenska Linijska, Jugoslavenska Linijska Plovidba
(Jugolinija), Jugolinija Oour Slobodna Jugolinija, Osnovna
Organizacija Udruzenog Rada-Slobodna Plovidba,
Defendants-Appellees. Cross-Appellants.
 No. 87-3295.
 United States Court of Appeals,
Fifth Circuit.
 June 28, 1988.
 
 Machale A. Miller, New Orleans, La., for plaintiffs-appellants, cross-appellees.
 M.D. Yager, New Orleans, La., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before TIMBERS*, KING and HIGGINBOTHAM, Circuit Judges.
 KING, Circuit Judge:
 
 
 1
 In an admiralty suit concerning damaged cargo, the cargo owner and its insurer appeal from a final judgment in their favor, challenging the district court's conclusion that the carrier was entitled to a limitation of liability; the carrier cross-appeals, challenging the district court's finding that the cargo was delivered to the carrier in good condition. We conclude that the district court erroneously limited the carrier's liability, but we decline to overturn the court's finding concerning the preshipment condition of the cargo. Thus we affirm the judgment as to the finding of liability, reverse the judgment as to the limitation of liability, and remand the case for a determination of damages.
 
 I.
 
 2
 Coutinho, Caro and Company, Inc.,[1] a steel importer, and Fireman's Fund Insurance Company, its insurer (collectively "Coutinho"), sued the M/V SAVA and its owners and operators (collectively "Jugolinija") to recover for rust damage to a shipment of steel coils shipped from Bilbao, Spain, to New Orleans, Louisiana.[2] The parties submitted the case to the district court for decision on the basis of stipulations, deposition testimony, and exhibits; they agreed that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. Secs. 1300-15, governed the case. The district court issued "Findings of Fact and Conclusions of Law" on February 12, 1987, ruling that Coutinho's evidence sufficiently established the carrier's liability under COGSA but that Jugolinija's evidence sufficiently invoked COGSA's limitation of liability provision, 46 U.S.C.App. Sec. 1304(5). By an amended judgment entered on March 24, 1987, the district court awarded damages to Coutinho totalling $195,937.94 plus interest and costs. Coutinho filed a timely notice of appeal from the final judgment, and Jugolinija filed a timely cross-appeal.
 
 
 3
 Because this case hinges on the carrier's and the shipper's respective burdens of proof under COGSA, the facts of the case may be briefly stated. In December of 1983, Coutinho purchased 420 coils of steel from a manufacturer in Spain--286 coils of cold rolled steel and 134 coils of galvanized steel.[3] The steel was manufactured at two mills during October and November of 1983, shipped to Bilbao in open trucks, loaded aboard the SAVA on December 29-30, 1983, and stowed in holds numbered four and six. Two marine surveyors observed the loading; SERMAP, acting on behalf of the vessel, compiled a survey report, and IMARCO, acting on behalf of the charterer, added its notes as exceptions to the thirty-six bills of lading that covered the shipment. During the voyage, inclement weather conditions frustrated ventilation of the cargo, which needed to be accomplished by opening the holds because the SAVA lacked a forced ventilation system to control the dewpoint in the holds. The SAVA arrived in New Orleans on February 14, and when discharge of the cargo began two or three days later, the coils showed various degrees of rusting. A clearly defined waterline on the coils from hold four and standing water in hold six indicated the presence of seawater in both holds. After two of Coutinho's buyers received their portions of the shipment and complained of heavy rust damage, Coutinho collected the coils at a warehouse in Chicago. Examination of the coils suggested flooding of the holds during the voyage and carriage of the cargo in a moisture-saturated environment. The damaged coils were subsequently sold at salvage or subject to depreciation allowances.
 
 
 4
 In the Findings of Fact and Conclusions of Law, the district court first held that Coutinho met its initial burden under COGSA of proving that Jugolinija was a "carrier" of the cargo. See 46 U.S.C.App. Sec. 1301. The court then found that Coutinho established a prima facie case of the carrier's liability under COGSA by showing that the carrier received the cargo in good condition but delivered it damaged. The court acknowledged that a bill of lading evidences the cargo's preshipment condition and that, in this case, the bills of lading contained numerous exceptions noting rust and packaging damage. But the court found the noted exceptions unpersuasive in view of the witnesses' testimony. The master testified that the exterior rust he saw on the coils did not particularly concern him and that he observed no waterline marks or indication that water might have penetrated the waster sheets. Based on photographs contained in the loading survey report, Coutinho's expert opined that the coils were loaded in mill condition and that the bills of lading described light atmospheric rust on the waster sheets, not a problem affecting the coils. Next, the court found that Jugolinija failed to prove that it exercised due diligence to prevent the harm or that a statutory exception caused the harm, a burden that shifted to the carrier under COGSA once the shipper presented a prima facie case. See Blasser Bros. v. Northern Pan-American Line, 628 F.2d 376, 381 (5th Cir.1980). The court rejected both of Jugolinija's exculpatory assertions--that condensation caused the rust and constituted a peril, danger, or accident of the sea, see 46 U.S.C.App. Sec. 1304(2)(c), and that insufficiency of packing caused the damage, see id. Sec. 1304(2)(n).
 
 
 5
 Finally, the district court concluded that Jugolinija's liability was limited to $500 per coil. To understand the court's ruling, a brief background discussion is in order. Section 1304(5) of Title 46 of the United States Code, COGSA's limitation of liability provision, provides in pertinent part:
 
 
 6
 (5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.
 
 
 7
 The Supreme Court has established that COGSA must be read in light of common law principles. See, e.g., Robert C. Herd & Co. v. Krawill Mach. Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); United States v. Atlantic Mut. Ins. Co., 343 U.S. 236, 72 S.Ct. 666, 93 L.Ed. 907 (1952). Thus federal courts have uniformly held--as did the district court in this case--that section 1304(5) embodies the traditional concept of "fair opportunity." See, e.g., General Elec. Co. v. MV Nedlloyd, 817 F.2d 1022, 1024 (2d Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 710, 98 L.Ed.2d 661 (1988); Cincinnati Milacron, Ltd. v. M/V American Legend, 784 F.2d 1161, 1163 (4th Cir.), rev'd on other grounds, 804 F.2d 837 (1986) (en banc); Komatsu, Ltd. v. States S.S. Co., 674 F.2d 806, 809 (9th Cir.1982). As we explained in Brown & Root, Inc. v. M/V Peisander, section 1304(5) requires that the shipper be allowed to increase the cargo's valuation above $500 per package because of "Supreme Court decisions which for well over a century consistently held that only when a common carrier grants its shippers a 'fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained.' " 648 F.2d 415, 420 n. 11 (5th Cir. June 1981) (quoting cases). Accordingly, courts have imposed the same precondition to limited liability under section 1304(5) that applied in suits to enforce similar contractual provisions under general maritime law--that is, to benefit from a limitation of liability provision, the carrier bears an initial burden of showing that it offered the shipper a fair opportunity to avoid the limitation. See, e.g., General Elec., 817 F.2d at 1029; Cincinnati Milacron, 784 F.2d at 1163; Komatsu, 674 F.2d at 809.
 
 
 8
 The courts have different views, however, of what evidence establishes a carrier's prima facie case of fair opportunity. In this case, Jugolinija relied solely on the following provision in the bills of lading:
 
 ADDITIONAL CLAUSES
 
 9
 (To be added if required in the contemplated trade).
 
 
 10
 ....
 
 
 11
 B. U.S. Trade. Period of Responsibility.
 
 
 12
 In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's custody.
 
 
 13
 The district court held that this clause incorporated COGSA into the bills of lading, provided the shipper with adequate notice of the terms of section 1304(5), and therefore constituted sufficient evidence of fair opportunity to shift to Coutinho the burden of showing that no opportunity actually existed. The court recognized that other federal courts have held that a bill of lading that merely incorporates COGSA by reference is insufficient evidence of fair opportunity, citing Cincinnati Milacron, Komatsu, and Pan American World Airways, Inc. v. California Stevedore & Ballast Co., 559 F.2d 1173 (9th Cir.1977). The court believed, however, that the Fifth Circuit has expressly rejected the rationale of those cases and adopted a constructive notice approach, citing Peisander and Wuerttembergische v. M/V Stuttgart Express, 711 F.2d 621 (5th Cir.1983).[4] Because Coutinho did not produce any evidence to show that a fair opportunity did not exist and because the bills of lading contained no declarations of value, the court ruled that Coutinho could recover a maximum of $500 per coil and awarded damages accordingly.
 
 
 14
 On appeal, Coutinho raises essentially one issue: whether the district court erred in holding that a carrier presents prima facie evidence that it afforded the shipper a fair opportunity to avoid the $500 per package limitation by merely adducing a bill of lading that refers to COGSA.[5] Coutinho contends that because the bills of lading constituted Jugolinija's only evidence of fair opportunity, Jugolinija failed to make the initial showing necessary to trigger COGSA's limitation of liability provision and thus the district court erred in limiting Coutinho's recovery. Jugolinija both disagrees with Coutinho's statement of the issue and urges us--if we conclude that COGSA's limitation provision is inapplicable--to address the issue of Jugolinija's liability. Jugolinija contends that the district court erred in finding that the cargo was in good preshipment condition. As we explain below, Coutinho correctly frames the issue and answers it; thus we will address both parties' issues in the order requested.
 
 II.
 A. Limitation of Liability under COGSA
 
 15
 The question presented by Coutinho's appeal is simply this: Was the presence of Additional Clause B ("Clause B") in the bills of lading legally sufficient to establish Jugolinija's prima facie case of fair opportunity? Coutinho argues that Clause B standing alone could not satisfy the carrier's burden for three reasons: first, Clause B did not incorporate COGSA into the contract of carriage by its own terms; second, Clause B did not notify the shipper of a potential limitation or how to avoid it; and third, even if Clause B had incorporated COGSA into the contract, a mere incorporation of COGSA generally would not provide adequate notice to the shipper of the terms of section 1304(5). The district court's answer to Coutinho's legal question is subject to our plenary review, and we must disagree with the district court's conclusion.
 
 
 16
 A reading of Clause B reveals that the basis of the district court's holding--that the clause incorporated COGSA into the bills of lading and provided constructive notice to the shipper of section 1304(5)'s statement of fair opportunity--is fatally flawed. COGSA applies by its own force "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade," although an express provision in a bill of lading will subject other contracts to COGSA's terms. See 46 U.S.C.App. Sec. 1312; see also id. Sec. 1300. COGSA governs "the period from the time when the goods are loaded on to the time when they are discharged from the ship," id. Sec. 1301(e), although the carrier and shipper may expressly cover by contract the period before loading and after discharge, id. Sec. 1307. In this case, Clause B does not state that the bill of lading is subject to COGSA's provisions or that COGSA is "deemed to be incorporated herein." See Peisander, 648 F.2d at 420 n. 9. Clause B merely provides that if COGSA applies, the period of applicability will include the entire time that the carrier has custody of the goods, including before loading and after discharge. Thus it is clear that if COGSA otherwise governed the bill of lading, Clause B operated to extend the duration of COGSA's effectiveness. Here, COGSA did control the bills of lading because of COGSA's compulsory terms and the nature of the voyage--not by the force of Clause B and the principle of incorporation. We fail to see how Clause B, which took effect (if at all) incident to COGSA's mandate, provided even constructive notice to the shipper of the content of COGSA's limitation of liability provision.
 
 
 17
 Without the faulty premise of the district court's reasoning--constructive notice through incorporation--Clause B provides no basis to sustain the district court's decision. In our cases cited by the district court, incorporation of COGSA was not determinative; we relied on evidence that the carrier gave the shipper a choice of rates and valuations. See Peisander, 648 F.2d at 424-25; Stuttgart Express, 711 F.2d at 622. In each case, the terms of the carrier's tariff clearly afforded the shipper an opportunity to declare an increased value and pay a higher freight charge.[6] In this case, by contrast, Clause B contains no indication that a choice of shipping rates existed or that the shipper knew a particular rate was tied to a limited value. Jugolinija points to no other evidence, such as a tariff, to show that it offered the shipper the option to declare a value. Therefore, the district court wrongly concluded that Jugolinija was entitled to limited liability because of unrebutted evidence of fair opportunity.
 
 
 18
 Jugolinija only briefly attempts to defend the district court's conclusion. Instead, Jugolinija contends that Coutinho mistakenly argues that the carrier must demonstrate fair opportunity. In Jugolinija's view, the real question is who bears the burden of proof? Its answer: the shipper must prove that a fair opportunity did not exist. Jugolinija's authority for this proposition is our statement to that effect in Peisander, 648 F.2d at 424, repeated in Stuttgart Express, 711 F.2d at 622. Implicitly, Jugolinija urges us to affirm the district court's result on a new legal ground because the district court based its decision on a statement of law gleaned from our decision in Peisander: To benefit from the $500 per package limitation of section 1304(5), the carrier must present prima facie evidence that it afforded the shipper an opportunity to avoid the limitation by declaring a higher value, consisting of a provision in either the bill of lading or the carrier's tariff.[7]
 
 
 19
 As previously stated, other federal courts have similarly allocated the burden of demonstrating fair opportunity, and although we have not stated the rule as plainly as other circuits, we have voiced our agreement with their statements of law. In our most recent case involving a carrier's entitlement to COGSA's limitation of liability provision, we stated: "As to the burden of proof issue, we are in agreement with the position of the United States Court of Appeals for the Second Circuit." Stuttgart Express, 711 F.2d at 622 (citing In re Isbrandtsen Co., 201 F.2d 281, 285 (2d Cir.1953)). In the cited case, the Second Circuit held that a limitation clause was valid if the shipper "in fact could have secured a higher valuation on paying a higher freight," and concerning the necessary proof, the court explained:
 
 
 20
 The clause in the Isbrandtsen bill of lading expressly provides that the shipper may avoid the limitation by declaring in writing the nature of the goods and a higher valuation, paying extra freight. Such a provision is prima facie evidence of what it recites. The [shipper] was at liberty to show the falsity of the recital....
 
 
 21
 Isbrandtsen, 201 F.2d at 285 (citations omitted). More recently, the Second Circuit summarized its view of the law following Isbrandtsen: "If the carrier succeeds in demonstrating fair opportunity, the burden of proof shifts to the shipper to demonstrate that a fair opportunity did not in fact exist." General Elec., 817 F.2d at 1029. According to these cases then, the carrier must present some evidence of fair opportunity before the shipper is required to come forward with its evidence that no opportunity existed. Our statements concerning the shipper's burden of proof in Peisander and Stuttgart Express are not inconsistent with this rule; in both of those cases, we first looked for evidence that the carrier offered the shipper a choice of rates and valuations. In this case, because the carrier did not make its threshold showing, the shipper's burden of proof is irrelevant. Thus contrary to Jugolinija's assertions, a failure of proof by Coutinho would not entitle Jugolinija to limited liability.
 
 B. The Carrier's Liability
 
 22
 Having resolved the limitation issue adversely to Jugolinija, we reach the issue raised in its cross-appeal: whether the district court erred in finding that the cargo was delivered to the ship in good condition. Although we must review a district court's factual findings under a clearly erroneous standard, see Fed.R.Civ.P. 52(a), Jugolinija essentially challenges the district court's finding on a legal ground. After carefully considering Jugolinija's argument, we find ourselves unwilling to disturb the district court's decision.
 
 
 23
 Jugolinija contends that the district court erroneously focused its inquiry concerning the coils' preshipment condition on evidence of rust and ignored evidence of other physical irregularities, such as manufacturing defects which were discovered when the coils were later tested and mechanical damage which was observed during loading. Jugolinija argues that such damaged goods cannot by definition be in "good" condition. In reply, Coutinho is willing to admit that some coils had broken bands and that some had indents or cuts. Coutinho notes, however, that it sought damages because wetting of the cargo during carriage aboard the SAVA allegedly caused heavy rusting of the steel; therefore, it argues, only evidence of rust was relevant in determining the coils' preshipment condition. We agree. In the only case relied on by Jugolinija to support its position, the court stated that a plaintiff seeking to recover for damaged cargo must show that the goods were delivered to the carrier "free of the damage for which recovery is sought." Caemint Food, Inc. v. Brasileiro, 647 F.2d 347, 355 (2d Cir.1981). In this case, because the alleged injury that occurred during shipment was rusting, the relevant aspect of the coils' condition was the presence of rust. Jugolinija does not challenge the district court's finding that the coils were delivered to the carrier free of rust. Thus we must conclude that the coils were in "good" condition when the carrier received them.[8]
 
 III.
 
 24
 For the above reasons, we AFFIRM the judgment as to liability, REVERSE the judgment as to the limitation of liability, and REMAND the case for a determination of damages. Costs of this appeal will be taxed against appellees/cross-appellants, Jugolinija.
 
 
 
 *
 Circuit Judge of the Second Circuit, sitting by designation
 
 
 [1]
 The complaint and thus the caption of the case reflect an incorrect spelling of "Coutinho."
 
 
 [2]
 Initially, Coutinho also sued SCNO Barge Lines, Inc. and three barges, which transported the steel coils from New Orleans to Chicago, but those defendants were voluntarily dismissed
 
 
 [3]
 As explained by the district court, a steel manufacturer generally prepares sheets of steel for shipping by coating each sheet with oil to guard against atmospheric rust, rolling the sheet into a coil, wrapping the coil in water resistant paper, encasing the coil in "waster" sheets made of substandard steel, securing the coil with bands, and finally, sealing the can-like package with edge protectors. The district court also explained rust: Galvanized steel is by its nature rust resistant, but it may rust white; cold rolled steel rusts red. Ordinary atmospheric rust is powdery and often covers the entire waster sheet; it does not indicate rust on the coil itself and is so common that many vessels use a rubber stamp to note it on bills of lading. Condensation may leave drops of water on the steel's surface and cause "blister" rust, resembling a popped blister; extremely heavy condensation, precipitation, or "ship sweat" causes "rundown" rust in a vertical streaked pattern
 
 
 [4]
 The court also relied on our statement in C.A. Articulos Nacionales de Goma v. M/V Aragua, 756 F.2d 1156, 1157 n. 1 (5th Cir.1985), that the limitation of liability provision "is available to the carrier whether the provision was actually included in the contract or not." In that case, the issue before us was whether the maritime doctrine of deviation might deprive the carrier of COGSA's limitation of liability; the shipper's opportunity to declare the value of the goods was unquestioned
 
 
 [5]
 Coutinho actually frames a more complex issue divided into subparts. Although we state the issue more simply, we address each of the arguments raised in Coutinho's appellate brief. We do not, however, find it necessary to address the arguments in Coutinho's reply brief. In response to Jugolinija's assertion that the shipper bears the burden of proving fair opportunity, Coutinho argues that the ultimate burden of persuasion rests at all times with the carrier and that we have spoken of the shipper's burden of proving fair opportunity only in the sense of a burden of producing evidence. For reasons that appear below, our analysis reaches only the nature of the carrier's initial burden, and we leave the definition of the shipper's burden for another day
 
 
 [6]
 In Peisander, we pointed out that the bill of lading expressly incorporated COGSA by a Clause Paramount and that, "more significantly," the carrier's tariff "very carefully" gave the shipper a choice. 648 F.2d at 424. Our opinion in Stuttgart Express does not indicate that the bill of lading referred to COGSA at all; instead, we relied on the fact that "[t]he option to increase valuation by declaration and paying a higher freight was clear in the tariff which was in terms incorporated into the bill of lading." 711 F.2d at 622. The facts of these cases reveal that we have not held, despite the district court's conclusion, that the mere incorporation of COGSA into a bill of lading constitutes prima facie evidence of fair opportunity. Because that circumstance is not before us in this case, we express no opinion on the issue
 
 
 [7]
 Apparently, the district court extracted this rule from our discussion of the Ninth Circuit's approach in Tessler Bros. v. Italpacific Line, 494 F.2d 438, 443 (9th Cir.1974), and from our application of the rule stated in Tessler to the facts there before us. See Peisander, 648 F.2d at 424 ("the circumstances of the case before us do not overcome the prima facie evidence of the opportunity for a choice of rates and valuations")
 
 
 [8]
 Moreover, Jugolinija's argument suggests that its real concern is that Coutinho will seek to prove actual damages by showing the cargo's reduction in value from "prime" material, rather than showing the decrease in value attributable to rust. Because the district court limited Coutinho's recovery, the court did not determine the amount of damages above $500 per coil. Therefore, to the extent that Jugolinija fears that a finding of "good" condition will result in an improper measurement of damages and wrongly create liability for defects other than rust, Jugolinija's argument is premature and should be directed to the district court at the proper time