RAINLY EQUIPOS DE RIEGO, S.R.L.,

v.

PENTAGON FREIGHT SERVICES, INC. and Pentrans Inc.

No. CIV.A. G–96–642.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 29, 1997.

John David Fischer, Feldman and Rogers, Houston, TX, Thomas John Ward, Brown McCarroll et al., Longview, TX, for Rainly Equipos de Riego, S.R.L.

Marcy Lynn Rothman, Bernsen Jamail et al., Houston, TX, for Pentagon Freight Services, Inc.

Gregory F. Burch, Liddell Sapp Zivley Hill & Laboon, Houston, TX, for Pentrans, Inc.

## ORDER

KENT, District Judge.

In this action, Plaintiff Rainly Equipos de Riego ("Rainly") brings claims for recovery

of damages under the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 et seq. ("COGSA"). Now before the Court is Plaintiff's Motion for Partial Summary Judgment on the issues of Defendant's liability under COGSA, the number of COGSA "packages," and the amount of Defendant's maximum liability. For the reasons set forth below, the motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff Rainly is an Argentinean company that imports aluminum and PVC irrigation pipes, inter alia, for resale to customers in Argentina. Rainly purchases this pipe from suppliers in varying lengths and widths, stores them in its inventory, and then resells them. Rainly placed an order for aluminum and PVC pipe with Kroy Industries, one of its American suppliers, in the fall of 1995. Rainly had previously ordered a pipe shipment from Kroy in January of 1995, which arrived in Argentina in good condition. Two later shipments from Kroy, in February and May of 1996, also arrived unharmed.

For the fall 1995 shipment, Rainly decided to use Defendant Pentagon Freight Services to prepare the pipe for ocean transport. Rainly claims that Pentagon was retained to package and load the pipe, while Pentagon denies that it packaged the pipe and claims that it only acted as a stevedore in loading the pipe that came already packaged from Kroy. The undisputed evidence is that the pipe was shipped by ground transport from Kroy, located in Nebraska, to Pentagon in Houston. According to the Kroy invoice, when it left Nebraska the pipe was "bundled and stuffed" and nested in wood-frame bundles. It is also undisputed that Kroy gave Pentagon instructions regarding how to load the pipe, although the exact content of these instructions is disputed. Pentagon received the pipe from Kroy by ground transport and loaded the pipe into nine containers for ocean transport. Pentagon arranged for the shipment of the pipe through Pentrans, Inc., a wholly owned subsidiary of Pentagon that operates as a non-vessel operating common carrier. The containers were loaded onto the M/V SANTOS, owned and operated by Ivaran Lines. Pentrans issued a "clean on board vessel" bill of lading on October 24, 1995 for shipment of 2,077 packages, with Kroy listed as the shipper/exporter, Rainly listed as the consignee, and Pentagon listed as the forwarding agent. Ivaran Lines issued its own bill of lading to Pentrans as the exporter, with Breakthru International, Pentagon's Buenos Aires agent, listed as the consignee, and Pentagon as the forwarding agent. The Ivaran Lines bill of lading listed the number of packages as nine (9).

The shipment of pipe arrived at the port in Buenos Aires, Argentina on or about November 16, 1995. They were delivered to Rainly's facility, and upon opening the first few containers, Rainly discovered that some of the pipes had been damaged. Rainly called its president, Jorge Hummel, who came and witnessed the opening of at least six of the containers. After opening all of the nine containers, but before unloading six of them, Rainly called its insurance carrier, Ascoli & Weil, to inspect the pipes and make a damage report. Ascoli & Weil's report concluded that the damages to the pipes were due to "poor conditioning of the pieces inside the container." Pentagon's insurance carrier, Cooper Brothers, also inspected the pipes and issued a report. This report concluded that the damages were caused by "pressure and/or blows of pipe upon pipe inside the container." Defendant's insurer concluded that 805 aluminum pipes and 78 PVC pipes had been damaged, and that 3 aluminum pipes and 2 PVC pipes had been broken.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The Court must accept the evidence of the non-moving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see* FED. R.CIV.P. 56(c). Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED.R.CIV.P. 56(e)). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. ANALYSIS

### A. *COGSA Liability*

■ The parties involved in a COGSA dispute must "engage in the ping-pong game of burden-shifting mandated" by sections 1303 and 1304 of the Act. *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1373 (5th Cir. 1979). To establish a prima facie case for recovery under COGSA, a plaintiff must prove that the cargo at issue was undamaged when delivered to the carrier and damaged when discharged at its destination.[1] *United States v. Central Gulf Lines, Inc.*, 974 F.2d 621, 628 (5th Cir.1992), *cert. denied*, 507 U.S.

917, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993); *Socony Mobil Oil Co. v. Texas Coastal and Int'l, Inc.*, 559 F.2d 1008, 1010 (5th Cir.1977). A clean bill of lading is prima facie evidence that the cargo was delivered in the condition therein described. *Blasser Bros. v. Northern Pan–American Line*, 628 F.2d 376, 381 (5th Cir.1980).

■ After the plaintiff establishes a prima facie case, the burden shifts to the defendant to prove either the exercise of due diligence under section 1304(1) or that one of the exceptions listed in section 1304(2) applies. *Id.* If the defendant then successfully rebuts the plaintiff's prima facie case, the burden returns to the plaintiff to prove that the defendant's negligence was at least a contributing cause to the damage. *Sun Co., Inc. v. S.S. Overseas Arctic*, 27 F.3d 1104, 1109 (5th Cir.1994).

■ The benefits and burdens of COGSA extend only to "carriers." The Act defines a carrier as an "owner or charterer who enters into a contract of carriage with a shipper." The term "contract of carriage" applies to contracts covered by bills of lading. 46 U.S.C.App. § 1301(b). In this case, Pentrans clearly acted as a carrier with respect to Pentagon because Pentrans entered into the contract with Ivaran Lines. According to both bills of lading in this case, Defendant was the forwarding agent. A freight forwarder cannot typically be held liable under COGSA as a carrier. This is because a freight forwarder normally only acts for the shipper in arranging for transportation of the cargo. However, in this case Defendant did more than merely arrange for transportation. Defendant unloaded the pipe when it came from Kroy, stored it temporarily in its yard, loaded it into containers, arranged for the shipment through Pentrans (Defendant's wholly-owned subsidiary) and invoiced Plaintiff for ocean freight, port charges, and marine tax. All of these factors lead to the conclusion that, although Pentrans acted as carrier with respect to Defendant, Defendant

---

1. Although COGSA does not apply to pre-loading events, parties to a shipment may extend the application of COGSA by agreement. *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 315 (2d Cir.1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984). Pentagon and Pentrans extended COGSA in this case by the terms of their own Conditions and by Pentrans's bill of lading.

acted as carrier with respect to Kroy and Rainly. *See Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205, 210 (2d Cir.1970) (discussing the dual role of shipper and carrier that a forwarder may play); *Zima Corp. v. M.V. Roman Pazinski,* 493 F.Supp. 268, 273 (S.D.N.Y.1980) (listing factors that determine when a forwarder is also a carrier). Consequently, the Court finds that Defendant qualifies as a carrier under COGSA.[2]

■ Next, Plaintiff has established a prima facie case for recovery under COGSA by showing that the pipe was undamaged when delivered to Pentagon and loaded aboard the vessel, and damaged when delivered to its destination. First, Pentrans issued a clean bill of lading for the pipe to be shipped from Kroy to Rainly aboard the M/V SANTOS. This bill of lading establishes a rebuttable presumption that the pipe was not damaged when loaded aboard the SANTOS. There is also a second clean bill of lading issued by Ivaran Lines for the pipe on board the SANTOS. Defendant has presented no evidence to rebut the presumption that the pipe was in good condition when delivered to Defendant and when placed on board the SANTOS.

Second, the insurers' reports establish that the pipe was damaged when it arrived at its destination in Argentina. Defendant argues that Plaintiff must establish, as part of its prima facie case, that Plaintiff itself did not damage the pipes during the unloading process and that there is a genuine fact dispute as to when the damage occurred. Defendant's argument in this regard misplaces the summary judgment burden. Plaintiff has produced the reports of both Plaintiff's and Defendant's insurance companies, with each concluding that the damage occurred *inside* the containers, not during the unloading process. Furthermore, Plaintiff's insurance company arrived to inspect the pipe before at least six of the nine containers at issue had been unloaded. Therefore, Plaintiff has met its burden under COGSA of establishing that the pipe was already damaged when it ar-

rived at its destination. Defendant must do more than merely point out the possibility that the pipe was damaged after it was delivered to Rainly; rather, Defendant must come forward with affirmative proof to back up its theory. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Defendant has not come forward with any affirmative showing that disproves the presumption that the pipe was damaged due to poor conditions inside the containers. Therefore, Plaintiff has established a prima facie case for recovery under COGSA.

■ In an attempt to escape liability under COGSA, Pentagon consistently denies that it "packaged" the pipe, insisting instead that it merely "loaded" the shipment in the packaged state in which Kroy transported it to Pentagon. Although it is not clear exactly how such facts, if established, would help Defendant, the Court assumes that Defendant is attempting to establish an insufficiency of packing defense under 46 U.S.C.App. § 1304(2)(n) by placing the blame for any packing deficiencies on a third party.[3] However, Defendant's argument that it did not package the pipe is without merit. The undisputed evidence is that Pentagon received the pipe bundled and stuffed in flatbed containers for ground transport. Pentagon states that it then unloaded the pipes, stacked them in its yard prior to shipment, and loose-loaded the pipe into nine large containers for pier delivery and ocean transport. Defendant ingeniously attempts to distinguish minute particulars of the packaging and loading process by claiming that the pipe was already "packaged," and that Pentagon merely "loaded" the pipe into the containers. Defendant's distinction between packaging and loading rests on a slender reed. The pipe was clearly packaged for ground transport when it arrived from Kroy, not for overseas shipment. Pentagon admits that it requested loading instructions for the pipe from Kroy. If it had truly only had to "load" prepackaged pipe, then it seems instructions would not be necessary.

2. Moreover, the terms of Defendant's own Conditions state that it is not a carrier unless it carries, stores, or otherwise physically handles the equipment. In this case, Defendant unloaded, stored, and loaded the pipes into containers for ocean shipment. The logical conclusion from Defen-

dant's own Conditions is that Defendant can be considered a carrier in this case.

3. Clearly, if Defendant packed the pipe itself, it cannot avail itself of the insufficiency of packing defense.

Furthermore, Defendant's arguments to this Court are completely contradictory. First, Defendant claims that it merely loaded the pipes into nine "containers." Next, it argues that there were only nine "packages" for COGSA liability purposes rather than 2,077 as Plaintiff argues. Therefore, Defendant is asserting that the nine "containers" are indeed "packages." Defendant undisputedly placed the pipe into these nine "packages." Yet, Defendant did not "package" the packages. The Court finds this argument dumbfounding and amazingly inconsistent.

Regardless of the nitpicky distinctions Defendant attempts to draw between loading and packaging, Defendant clearly had the duty to ensure that the shipment was properly packed to prevent damage during ocean transport.[4] Moreover, Plaintiff has produced admissible evidence that Kroy instructed Pentagon as to the proper method of packing the pipe, and an affidavit establishing that Pentagon did not package the pipe as instructed. Defendant alleges that this testimony is self-serving and should not support a summary judgment. There is no case authority to indicate that the testimony of a third party who is not involved in the dispute at bar is "self-serving."[5] The only evidence Defendant has cited to rebut Plaintiff's showing that the pipe was not packed according to Kroy's instructions is the affidavit of Defendant's own representative. According to the case authority cited by Defendant itself,[6] the Court should not consider this self-serving testimony by an interested party. However, the Court finds that the issues raised by these conflicting affidavits, regarding whether Kroy gave proper loading instructions and whether Defendant followed them, are not dispositive to this motion. The evidence as discussed above indicates that Defendant did indeed have the responsibility to ensure that the pipe was packed properly for ocean transport. The evidence indicates that the pipe was not properly placed in the containers. Consequently, Defendant can be held liable for any damage resulting from the pipe being improperly packed in the containers.

Defendant has failed to present any other credible evidence to rebut Plaintiff's prima facie case for recovery under COGSA. Accordingly, Plaintiff's Motion for Partial Summary Judgment on the issue of Defendant's liability under COGSA is hereby **GRANTED**.

### B. *Number of COGSA Packages*

Also before the Court on Plaintiff's Motion for Partial Summary Judgment is the issue of how many COGSA "packages" Defendant is liable for in this dispute. Under COGSA, liability is limited to "$500 per package." 46 U.S.C.App. § 1304(5). Consequently, disputes over what constitutes a "package" are predictably common.

The number of packages as listed on the bill of lading is proof of the number of packages for COGSA purposes. *See Seguros "Illimani" S.A. v. M/V POPI P*, 929 F.2d 89, 94 (2d Cir.1991). " 'Package' is a term of art in the ocean shipping business, and parties to bills of lading should expect to be held to the number that appears under a column whose heading so unmistakably refers to the number of packages." *Id.* This approach "encourages precision in filling out a key aspect of important documents, and the more consistently it is followed, the more it should minimize disputes." *Id.*

This case, however, presents the unique situation where two bills of lading were issued by two different parties for the same cargo and the same shipment. One bill of lading, issued by Pentrans for the shipment from Kroy to Rainly, lists the number of packages as 2,077. The second bill of lading,

---

**4.** One of Defendant's representatives stated in an affidavit that Defendant requested instruction from Kroy on loading the pipe. Such requested instruction is evidence that Defendant was aware of its duty to pack the pipe so that it would not be damaged during transport.

**5.** Defendant cites two cases for its argument that this testimony is self-serving and should not be considered, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994), and *Elliott*

*v. Group Medical & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). However, both cases cited involved the testimony of one of the parties to the dispute. Kroy is not a party to this lawsuit; therefore the testimony of its employees may properly be considered by this Court on summary judgment.

**6.** *Supra.*

issued by the shipper Ivaran Lines for a shipment from Pentrans to Breakthru, Pentagon's Argentinean agent, lists the number of packages as nine.

■■■■ The Court finds the Pentrans bill of lading to be operative, for several reasons. First, where multiple bills of lading have been issued in commerce for a single shipment describing the same cargo, there is a presumption of fraud upon commerce. These two bills of lading given to two different entities represent two separate entitlements to the same cargo. This situation has the potential to result in serious confusion, as exemplified in this case. The Court presumes that one of the bills of lading was issued fraudulently. The Pentrans bill of lading was issued by a sister company of Defendant, and it is the only bill of lading to which Plaintiff is a party. Therefore, the Court finds that the Ivaran bill of lading is conclusively fraudulent, and the Pentrans bill of lading is the operable one.

■■■■ The finding that there are 2,077 COGSA packages is further supported by the traditional reluctance among courts to treat a container as a COG$A package. *See Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam,* 759 F.2d 1006, 1015 (2d Cir.1985), *cert. denied,* 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985). This holds true especially where the operative bill of lading indicates that the number of packages is not the same as the number of containers. The rule in the Fifth Circuit is that, where the parties have knowledge of the contents of the containers, a container is not a COGSA package. *Croft & Scully Co. v. M/V Skulptor Vuchetich,* 664 F.2d 1277, 1281 (5th Cir.1982); *Allstate Ins. Co. v. Inversiones Navieras Imparca,* 646 F.2d 169 (5th Cir.1981). As stated by the Fifth Circuit, "[c]learly the goal of international uniformity is better served by the approach ... that generally a container supplied by the carrier is not a COGSA package if its contents and the number of packages or units are disclosed." *Croft & Scully,* 664 F.2d at 1281. This Court agrees. Pentagon clearly had knowledge of the contents of each container, since it loaded the containers itself. Moreover, the Pentrans bill of lading lists the number of "packages" as 2,077, making the conclusion that Defendant should be held to this number even easier. Accordingly, Plaintiff's Motion for Partial Summary Judgment that there are 2,077 COGSA packages at issue is **GRANTED**.

### C. *Maximum Liability Under COGSA*

■■■ In its Response, Defendant does not dispute or even address Plaintiff's argument that the $50 per entry of shipment limitation on liability should be declared invalid. The Court finds that this restriction is invalid as against public policy and contrary to the purpose of COGSA. *See* 46 U.S.C.App. § 1304(5); *Hanover Ins. Co. v. Shulman Trans. Enterprises, Inc.,* 581 F.2d 268, 272–273 (1st Cir.1978). The purpose of section 1304(5) "was to set a reasonable figure below which the carrier should not be permitted to limit his liability." *Allstate,* 646 F.2d at 171. Accordingly, the maximum liability Defendant may be exposed to in this case is $500 per package, multiplied by 2,077 packages, or $1,038,500.[7]

### IV. CONCLUSION

For the reasons stated above, Plaintiff Rainly's Motion for Partial Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**

---

**7.** This is solely an upper limit; in no event will Defendant be liable for more than Plaintiff's actual damages.